Concetta **PANZARINO**, Plaintiff,

v.

Margaret M. **HECKLER**, Secretary of Health and Human Services, Defendant.

**No. 84 Civ. 7106 (RLC).**

United States District Court, S.D. New York.

Dec. 18, 1985.

Mid-Hudson Legal Services, Inc., (Thomas N.N. Angell, Poughkeepsie, N.Y., of counsel), for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, Rosemarie E. Matera, Sp. Asst. U.S. Atty., Annette H. Blum, Regional Atty.—Region II, Fran Winter, Asst. Regional Atty., Office of the Gen.

Counsel, Dept. of Health and Human Services, for defendant.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Concetta Panzarino seeks review of a decision by the defendant, the Secretary of Health and Human Services (HHS), terminating her Supplemental Security Income (SSI) benefits. The case is before the court on motions by both plaintiff and defendant for judgment on the pleadings pursuant to Rule 12(c), F.R. Civ.P.

*Facts*

By any account, the plaintiff is a remarkable woman. She suffers from amyotonia congenita. This disease and its attendant complications render her almost completely paralyzed—she can move her right thumb—from the neck down. The record paints a distressing portrait of her physical condition: Ms. Panzarino is "about 3½' tall in a gnarled up position.... She has a sway back & and an extended chest & has to be hand fed." Report of Contact, Record at 70.[1] She uses a respirator twice a day and requires constant daily attendance. Despite these obstacles, Ms. Panzarino completed college and, until 1974, she supported herself. In July, 1977 she applied for and was found eligible to receive SSI benefits.[2] In finding Ms. Panzarino eligible for SSI benefits, the Secretary approved her plan to achieve self-support (PASS), submitted pursuant to 42 U.S.C. §§ 1382a(b)(4)(B)(iv) & 1382b(a)(4). Although the record does not offer a contemporaneous version of this plan, a document submitted in the course of the instant termination proceedings shows that the Secretary approved a PASS that would enable Ms. Panzarino to become a registered art therapist for disabled children. Exhibit 16, Record at 76. The New York state requirements for that profession are a Master's

1. The "Record" is the court transcript of administrative proceedings submitted by HHS.

2. Disabled persons are eligible for SSI benefits only if their income and resources fall below a certain statutory maximum. *See* 42 U.S.C. § 1382.

degree in therapy and one thousand hours of paid, supervised work as an art therapist.

Ms. Panzarino steadily pursued her PASS to become a registered art therapist. She completed her course work at New York University and started work on her master's thesis. She began to fulfill the experience requirement by working at various part-time jobs. Yet ill-health interfered with her work and studies. Her physical condition renders her particularly prone to upper respiratory infections; various colds and viruses would keep her bedridden for one or two weeks at a time. Hearing, Record at 32. Other difficulties also hindered her progress; for example, she was often unable to find suitable attendants. *Id.* at 39. Nonetheless, she never abandoned pursuit of her goal of becoming a registered art therapist. Instead, she would reduce her course load, complete courses after the end of the term, or reduce the number of hours she worked. *Id.* at 33.

Originally, Ms. Panzarino's PASS was approved for an eighteen-month period. Her medical condition and other difficulties forced her to alter her timetable for completing her PASS. In 1979, she applied for and received an eighteen-month extension of her PASS. In January, 1981, she received a twelve-month extension.

In August, 1982 the Secretary notified Ms. Panzarino that her income exclusion had expired at the end of January, 1982 and that she was no longer eligible for SSI payments. A regulation promulgated by the Secretary, 20 C.F.R. § 416.1181(d), limits the period of income and resource exclu-

sion to forty-eight months.[3] Ms. Panzarino sought reconsideration of this decision; it was affirmed. Record, at 56. She then sought a hearing with an administrative law judge (ALJ). In July, 1983, the ALJ found that Ms. Panzarino had "substantially completed" her PASS and that she needed her SSI benefits (and concomitant Medicaid benefits) to continue fulfilling the work experience requirement. Despite the clear mandate of § 416.1181(d) limiting the income exclusion to a 48-month period, he found that the income exclusion should be continued for a "reasonable period of time to allow [Ms. Panzarino] an opportunity to complete her requirements for certification as an art therapist." Hearing Decision, Record at 16.

The Appeals Council of HHS reviewed the ALJ decision on its own motion, pursuant to 20 C.F.R. §§ 416.1469 and 416.-1470(a)(2). In August, 1984, the Appeals Council reversed the ALJ decision, finding that there was no authority to extend the income exclusion beyond the 48 month period provided by 20 C.F.R. § 416.1181(d). This suit was timely filed in October, 1984. This court has jurisdiction to review the Secretary's decision pursuant to 42 U.S.C. § 1383(c)(3).

*Discussion*

The regulation clearly prohibits extending the period of income exclusion beyond 48 months. The issue we must decide is simple: does this regulation violate Congress's intent when it provided PASS benefits to the disabled? Mindful of the deference that we must grant the Secretary's interpretation of the statute entrusted to

---

**3.** The regulation was originally promulgated as 20 C.F.R. § 416.1731. The relevant portion of that regulation differs only semantically from the current version. The current regulation, § 416.1181, sets forth the requirements of a PASS as follows:

A plan to achieve self-support must—
    (a) Be designed especially for you;
    (b) Be in writing;
    (c) Be approved by us (a change of plan must also be approved);
    (d) Be designed for an initial period of not more than 18 months. We may extend the

period for up to another 18 months if you cannot complete the plan in the first period. We may allow a total of up to 48 months to fulfill a plan for a lengthy education or training program;
    (e) Show your specific occupational goal;
    (f) Show what money you have and will receive, how you will spend it, and how you will use it to obtain your occupational goal;
    (g) Show how the money you set aside under the plan will be separated from your other funds.

her administration, we nonetheless find that it is.

In 1972, Congress replaced three separate programs for aid to the aged, blind and disabled with a single program, SSI. P.L. 92–603, 86 Stat. 1470. One of the chief objectives of this new program was to provide "[i]ncentives and opportunities for those able to work or to be rehabilitated that will enable them to escape from their dependent situations." H.Rep. 92–231, 1972 U.S.Code Cong. & Admin.News 4989, 5133. The PASS income and resource exclusion was one of two means of doing so. *Id.* at 5138. As codified at 42 U.S.C. §§ 1382a(b)(4)(B)(iv) and 1382b(a)(4), any income or resources can be excluded from calculation of those available to a disabled person where the claimant "has a plan for achieving self-support approved by the Secretary." The statute provides for income and resource exclusion "as may be necessary for the fulfillment of such plan." *Id.* In passing these provisions, Congress intended that they be administered generously. The House Report accompanying the bill states that the committee sought "to provide *every opportunity and encouragement* to the blind and disabled to return to gainful employment." 1972 U.S.Code Cong. & Admin.News at 5138 (emphasis supplied). The report went on to state that the "committee intends that these provisions be liberally construed if necessary to accomplish [this] objective[ ]." *Id.* Neither the language of the statute itself nor the legislative history places limitations of any sort on the income or resource exclusion once a PASS is approved.

The regulation at issue here was originally promulgated by the Department of Health, Education and Welfare (HEW) in 1974. Its substance remains unchanged since that time. When the regulation was promulgated, no purpose or justification was offered in support of an absolute time limit for the fulfillment of an approved PASS. *See* 39 Fed.Reg. 1359 (1974); 39 Fed.Reg. 29,588 (1974). The only discussion of the 48 month limitation demonstrates that HEW assumed that the disabled would strive for their occupational goals at the same pace as the non-disabled. HEW responded to a comment that the 48 month period effectively excluded professional education as a PASS objective: "While the obtaining of a professional or advanced degree might help an individual to more readily achieve his optimum earning capacity, this would go beyond the scope of the supplemental security income program, which provides only that he be given economic encouragement toward achieving his own self-support." 39 Fed. Reg. at 29,589. This comment—addressed in greater detail *infra*—betrays HEW's default assumption that disabled persons could indeed complete an undergraduate education in the same 48 months that a non-disabled person would need. The Secretary did not consider the additional obstacles faced by the disabled.

In support of this regulation, the Secretary relies upon the principle of deference to agency interpretations of the statutes delegated to their administration. Indeed, great weight must be given to an executive department's interpretation of the statute that it is entrusted to administer. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Supreme Court has noted that judicial restraint is especially warranted under some circumstances because of HHS's unusually broad authority to administer certain sections of the complex Social Security Act. *Schweiker v. Grey Panthers,* 453 U.S. 34, 43, 101 S.Ct. 2633, 2639, 69 L.Ed.2d 460 (1981). In *Grey Panthers,* for example, the Secretary's interpretation of the law was given "legislative effect" because of an express delegation of power to promulgate regulations on a specific issue. However, in this case, Congress did not "explicitly [leave] a gap for the agency to fill" by means of regulation. *Chevron, U.S.A.,* 104 S.Ct. at 2782. Since rulemaking authority vis-a-vis PASSes is only implicit, the scope of our review is somewhat more searching than the "arbitrary, capricious, or manifestly contrary to the statute" standard of cases such as *Grey Pan-*

*thers.* The court may substitute its construction of a statute for HHS's if the agency construction is unreasonable. Thus, although our review may be restrained, it is not without bite.

■ The court must scrutinize the regulation in terms of the statute's language, purpose and legislative history. *See Johnson v. Heckler,* 769 F.2d 1202 (7th Cir. 1985). The legislative history provides compelling evidence of Congress's intent when it created the PASS income and resource exclusion: to provide special incentives for a group with exceptional needs. It is unreasonable for HHS to devise a regulation such as this which fails to take those needs into account. The regulation frustrates both the literal mandate of the statute to provide for income and resource exclusion "as necessary" to fulfill an approved PASS, and the House Committee Report directive to provide "every opportunity and encouragement" to the disabled.

The issue presented is not the reasonableness of setting criteria for approval of proposed PASSes, but the reasonableness of setting time constraints on the opportunity to complete an approved PASS. The facts of this case illustrate the unreasonableness of the limitation. Ms. Panzarino never abandoned her work or her studies. Her difficulties in completing her PASS, although not wholly foreseeable, arose in connection with her disability. Only the inflexibility of the 48 month limitation period prevents her from achieving economic self-sufficiency. Surely this inflexibility violates the liberal construction of the PASS provision that the legislative history mandates.

The Secretary's arguments in support of the regulation do not convince the court that it is a reasonable construction of the statute. First, the Secretary points out that the 48 month limit is not an unreasonably short period to achieve most occupational goals. The 48 month period may not be an unreasonable time for non-disabled persons to achieve most occupational goals. It is, however, unreasonable to set such a time limit for the disabled without consider-

ation of their particular needs. Congress anticipated such consideration when it stated that the PASS provisions should be liberally construed.

■ Next, the Secretary insists that PASSes are designed to allow the disabled to achieve mere economic self-support, not the grandest of career ambitions. The time limitation enables her to reject plans that are too ambitious. In effect, the Secretary seeks to use the time limit as a proxy for regulating the permissible occupational objectives of a PASS. This argument reiterates HEW's comment when the regulation was first promulgated in 1974. Time has not made this point relevant or persuasive. First, as was stated before, the criteria for approval of PASSes is not at issue here. Second, it is simply irrational to use a time limit as a proxy for limiting occupational objectives for the disabled, who cannot be expected to achieve their career goals at the same pace as the non-disabled.

■ Finally, the Secretary argues that the regulation should be upheld because it is uniform and efficient. This argument deserves short shrift. Efficiency in operation cannot make a regulation reasonable. *Johnson,* 769 F.2d at 1213.

■ The 48 month limitation of 20 C.F.R. § 416.1181(d) violates the Social Security Act. Plaintiff's motion is granted and the decision of the Secretary is reversed and remanded for consideration without reference to the 48 month limitation of the regulation.

IT IS SO ORDERED.