**Harold LAMKIN, Plaintiff,**

v.

**Otis BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 88–K–1768.**

United States District Court, D. Colorado.

Sept. 14, 1989.

R. Eric Solem, Legal Aid Soc. of Metro Denver, Inc., Denver, Colo., for plaintiff.

Stephen Taylor, Ass't U.S. Atty., Denver, Colo., for defendant.

## ORDER AND JUDGMENT ON APPEAL

KANE, Senior District Judge.

This is an appeal from a final decision of the defendant Secretary under the Social Security Act. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). It is conceded that the decision appealed from is the defendant's final decision and is therefore subject to judicial review.

I have examined the entire record on appeal and reviewed the briefs filed by the parties. Accordingly, I find that oral argument would not be of material benefit in deciding this appeal and therefore dispense with it.

The plaintiff is a twenty-four year old man who was granted disability benefits on June 18, 1984, at the age of eighteen because he is mentally retarded, has grand mal and complex seizures and a speech impediment. The award of disability insurance benefits commenced as of December 7, 1983.

The Plaintiff received benefits as a disabled child under his deceased mother's account number because his disability began before age twenty-two. *See* 20 C.F.R. 404.350(e) (1988). The statute and regulations provide for a nine month trial work period in which an individual may test his ability to work and still be disabled. 42 U.S.C. §§ 402(d)(1)(G)(i), 422(c)(1), (4); 20 C.F.R. § 404.1592(a) (1988). Under these provisions, an individual may perform "services" in as many as nine months, not necessarily consecutive, without losing his eligibility for benefits. 20 C.F.R. § 404.1592(a) (1988).

Services are defined in 20 C.F.R. § 404.1592(b) (1988) as:

> [A]ny activity, even though it is not substantial gainful activity, which is done by a person in employment ... for pay or profit, or is the kind normally done for pay or profit. If you are an employee, we will consider your work to be 'services' if in any calendar year after 1978 you earn more than $75.00 per month.... We generally do not consider work to be 'services' when it is done without remuneration or merely as therapy or training....

The regulations further provide for a reentitlement period, which is an additional period after the nine month trial work period during which a beneficiary can continue to receive benefits. 20 C.F.R. § 404.1592(a) (1988). During the reentitlement period, a beneficiary can receive disability benefits for the months in which he did not engage in substantial gainful activity. *Id.*

On June 3, 1987 the plaintiff was notified by the defendant that his disability had ended because, according to the regulation, his trial work period had expired in December, 1984 and he thus became able to do substantial gainful activity in December, 1985. According to the defendant, disability benefits should have been terminated as of February, 1986.

The plaintiff filed a timely application for reconsideration of this initial decision. In response, on September 11, 1987 the defendant notified plaintiff that his trial work

period ended as of July, 1985, that he became able to do substantial gainful activity in March, 1986 and, because of this revision, his disability should have ceased as of May, 1986 with the exception of his eligibility for a payment in October, 1986.

For clarity's sake, it is to be observed that none of these decisions relates to a cessation or change in plaintiff's physical and mental condition. The record reveals that plaintiff's impairments have been with him since birth. Rather, the dispute is with the application of the Social Security Administration's regulations to a fixed medical condition and a transient episode of trial work experiences.

The plaintiff was dissatisfied with the reconsidered decision of September 11, 1987 and filed a timely request for a hearing before an administrative law judge. The hearing was held and on April 29, 1988 the administrative law judge issued a decision favorable to the plaintiff. The administrative law judge ruled that the plaintiff's trial work period did not end until October, 1986; that plaintiff was able to do substantial gainful activity at that time, and, perforce the regulations, his benefits should not have ceased until December 31, 1986.

Since the plaintiff was not working at the time of his hearing before the administrative law judge, he was again entitled to disability benefits pursuant to the Omnibus Budget Reconciliation Act of 1987. An additional consequence of the administrative law judge's decision was that the alleged overpayment of benefits was eliminated.

On August 23, 1988, however, the defendant, *ex mero motu*, reversed the decision pursuant to 20 C.F.R. § 404.969 and found that the plaintiff's trial work period ended as of August, 1985; that he became able to perform substantial gainful activity in September, 1985 and, accordingly, his disability should have ceased on November 30, 1985. Therefore, the defendant determined plaintiff's re-entitlement period expired at the end of November, 1986. Based on these determinations, the defendant notified the plaintiff that he had been overpaid $1,455 and made demand for reimbursement. From this decision the plaintiff appeals.

The appeals council did not find the administrative law judge erred on the facts or abused his discretion. Rather, it reversed his decision by concluding that certain of plaintiff's employment positions were not "merely training" as set forth in the regulations.

The plaintiff's work activity is not in factual dispute. From March 1984 through May 1984 plaintiff worked at a "Round The Corner" restaurant as a busboy. He earned $143.00 in March and $126.00 in both April and May. From July through September 1984 plaintiff was placed at Fitzsimmons Army Medical Center by the Arapahoe County Employment and Training Center. He was not employed by Fitzsimmons and the U.S. Army Medical Center paid no wages to him. This placement at Fitzsimmons is crucial to the calculations used by the administrative law judge, the plaintiff's counsel and the appeals council. What needs to be emphasized is that the plaintiff was fired from his employment position at the "Round the Corner" restaurant for low productivity and failure to follow supervisory directions. He was not fired from the placement at Fitzsimmons nor is there anything at all in the record which even suggests that he could have been fired. Certainly, he could not have been fired by Fitzsimmons as no employer-employee relationship existed.

The plaintiff attempted to work at a shoe store in February, 1985, but was terminated at the end of the month for low productivity and inability to follow supervisory directions. During the Christmas, 1984, season, he worked for only two weeks for Montgomery Wards.

In the fall of 1985, the plaintiff participated in a job training program at Safeway Stores funded pursuant to the Job Training Partnership Act. The program was administered by the Arapahoe County Employment and Training Center. At the end of the contract period on June 30, 1986, Safeway hired the plaintiff as a regular employee, but then terminated him in May of 1987 because of poor job performance.

In reaching his decision, the administrative law judge determined that the plain-

tiff's activity at Fitzsimmons under the auspices of the Arapahoe County Employment and Training Center and his participation in the Job Training Partnership Act program at Safeway Stores from November, 1985, to June 30, 1986, did not constitute "services" because it was "merely training" under 20 C.F.R. § 404.1592(b).

The appeals council review considered this an error of law and held that plaintiff's on-the-job training at Safeway Stores and his summertime post at Fitzsimmons were not "merely training" in accordance with the relevant regulations. The appeals council determined that "merely training" refers to classroom instruction, vocational training or rehabilitation, employment counseling or "similar" activities. The defendant argues that this interpretation by the appeals council is entitled to great deference.

The plaintiff raises three issues to be decided in this appeal: viz.,

1. Whether the administrative law judge's finding that plaintiff was engaged in "merely training" is a finding of fact or a conclusion of law. (If indeed it is a finding of fact, then, plaintiff argues, the appeals council could not review it without giving notice in accordance with 20 C.F.R. § 404.969 (1988)).

I will address this issue further. It is clear to me that the determination by the administrative law judge is a conclusion based upon his assessment of the facts as he found them and the application of the regulation which was given to him. It was clearly within the province of the appeals council to review that determination as long as it did not alter or ignore the facts which supported that conclusion. Yet, as will be discussed in detail, that is precisely what the appeals council did.

2. Are the summertime job experience programs and the on-the-job training program under the Job Training Partnership Act "services" within the meaning of 42 U.S.C. § 422(c)(2)?

Suffice it to say at this point that the resolution of this matter depends on far more than giving "great deference" to the interpretation of the agency regulations by the appeals council.

3. Is it proper for the defendant to cease disability payments while an otherwise qualified beneficiary is engaged in a vocational training program under the Job Training Partnership Act? Is such a cessation of benefits inconsistent with the requirements of 42 U.S.C. § 425(b)?

When faced with difficult questions of statutory interpretation, courts have often looked to the government agency charged with the administration of the particular statute for guidance. Because of their specialized expertise, reviewing courts have recognized that agency interpretations of statutes should be accorded considerable deference. Both the Supreme Court and the Tenth Circuit have reiterated this rule. *See, e.g., K Mart Corp. v. Cartier*, 486 U.S. 281, 108 S.Ct. 1811, 1828, 100 L.Ed.2d 313 (1988) (longstanding administrative practice should not be "lightly overturned"); *United States Dept. of Energy v. Federal Labor Relations Auth.*, 880 F.2d 1163, 1165 (10th Cir.1989) (recognizing rule); *CBC, Inc. v. Board of Governors of Fed. Reserve Sys.*, 855 F.2d 688, 690 (10th Cir.) (Board's review to be given "substantial deference"), *cert. denied*, —— U.S. ——, 109 S.Ct. 1578, 103 L.Ed.2d 943 (1988); *New Mex. Envtl. Improvement Div. v. Thomas*, 789 F.2d 825, 831 (10th Cir.1986) (agency interpretation entitled to "much deference"); *Tsosie v. Califano*, 651 F.2d 719, 722 (10th Cir.1981) (agency view normally to be given "substantial weight").

Several factors have contributed to the view that agency interpretations merit serious consideration by an appellate court. In particular, courts will rely more heavily on an agency's ruling when the agency is charged with interpreting the statute in question, when its interpretation is contemporaneous with the statute's enactment, and when the interpretation has been consistently adhered to by the agency for a long period of time. *New Mex. Envtl. Improvement Div.*, 789 F.2d at 831–32. When Congress has not overruled a longstanding agency interpretation after it has been confronted with legislation specifical-

ly designed to supplant the interpretation, an even greater measure of deference is required. *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 137, 106 S.Ct. 455, 464, 88 L.Ed.2d 419 (1985). In addition, when it appears that Congress has explicitly left a gap for the agency to fill, "there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *see also Philadelphia Gear Corp. v. FDIC*, 751 F.2d 1131, 1135 (10th Cir. 1984); *Nevada Power v. Watt*, 711 F.2d 913, 927 n. 12 (10th Cir.1983).

■ In considering the weight to be given an administrative construction, the court should not displace a construction which is a reasonable interpretation of a statute, even though there may be another equally reasonable construction. *Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985) (agency construction need only be "sufficiently rational"); *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781 (court need not find agency's construction to be the one it would have reached if first confronted with the issue; it must only be a "permissible construction"); *Jones v. FDIC*, 748 F.2d 1400, 1405 (10th Cir.1984); *Rocky Mountain Oil & Gas Ass'n v. Watt*, 696 F.2d 734, 745 (10th Cir.1982).

■ Despite the regularity with which courts have deferred to agency views, however, "administrative interpretations are entitled to deference, not obeisance." *Nevada Power Co.*, 711 F.2d at 920. The pivotal issue with respect to any agency interpretation of a statute, whether it is reached by adjudication or rulemaking, is congressional intent. *See Securities Indus. Ass'n v. Board of Governors of Fed. Reserve Sys.*, 468 U.S. 137, 143, 104 S.Ct. 2979, 2982, 82 L.Ed.2d 107 (1984). The process of judicial review of an agency's construction of a statute has two steps. First, the court must consider whether Congress has addressed the precise question at

issue, either in the statutory language, *see Mead Corp. v. Tilley*, —— U.S. ——, 109 S.Ct. 2156, 2162, 104 L.Ed.2d 796 (1989), or in its legislative history, *see Abourezk v. Reagan*, 785 F.2d 1043, 1053 (D.C.Cir.1986), *aff'd*, 484 U.S. 1, 108 S.Ct. 252, 98 L.Ed.2d 1 (1987). If so, Congress' interpretation is controlling. If the statute is silent or ambiguous with respect to a specific issue, the court must determine whether the agency's ruling on that issue is based on a permissible construction of the statute. *Mead Corp.*, 109 S.Ct. at 2162; *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781; *Abourezk*, 785 F.2d at 1053.

Just as it is clear that courts will often defer to agency interpretations, it is equally clear that courts must not abdicate their role by affirming agency judgments based on statutory interpretations which are contrary to congressional intent or a statute's plain meaning. *See K Mart Corp.*, 108 S.Ct. at 1817; *Chemical Mfr's Ass'n*, 470 U.S. at 125, 105 S.Ct. at 1107. Thus, even contemporaneous and longstanding agency interpretations have been rejected when found to be at odds with the plain language of a statute. *See Public Employees Retirement Sys. v. Betts*, —— U.S. ——, 109 S.Ct. 2854, 2863, 106 L.Ed.2d 134 (1989). Most recently the Tenth Circuit has declined to accept an agency view of a statute because it was clear that the view was contrary to or expanded upon the terms of a statute. *See United States Dept. of Energy*, 880 F.2d at 1166–72 (Federal Labor Relations Authority's definition of collective bargaining unit based on its interpretation of Prevailing Rate Systems Act rejected); *Montero v. Meyer*, 861 F.2d 603, 608–09 (10th Cir.1988) ("English Only" case in which the court reversed the district court's decision as to the scope of the Voting Rights Act which had followed the Attorney General's interpretive regulations), *cert. denied*, —— U.S. ——, 109 S.Ct. 3249, 106 L.Ed.2d 595 (1989). Moreover, the Tenth Circuit has adopted the view, followed in other jurisdictions as well, that the court need not defer to an agency interpretation of a statute when that agency is not charged with the responsibility of administering that statute. *See United*

*States Department of Energy*, 880 F.2d at 1166; *Tsosie*, 651 F.2d at 722.

In the social security arena, the practice of judicial deference to the Secretary's interpretation of statutes delegated to the Department of HHS for its administration has been both accepted and rejected. In *Schweiker v. Gray Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981), the Supreme Court gave the Secretary's interpretation "legislative effect" because the Social Security Act (SSA) gave the department unusually broad authority to administer certain sections of the SSA relating to the calculation of the income available to an applicant for Medicaid benefits. *Id.* at 44, 101 S.Ct. at 2640. More recently, however, the Secretary's interpretation of a statute through the department's regulations was rejected. In *Panzarino v. Heckler*, 624 F.Supp. 350 (S.D.N.Y.1985), the court invalidated the Secretary's regulation which limited an SSI recipient's ability to complete a plan to achieve self support (PASS) to forty-eight months. The court noted that, unlike the case in *Gray Panthers*, "rulemaking authority vis-a-vis PASSes is only implicit, [and] the scope of our review is more searching than [in *Gray Panthers*]." *Id.* at 353. The court went on to find that the HHS regulation "frustrates both the literal mandate of the statute to provide for income and resource exclusion 'as necessary' to fulfill an approved PASS, and the House Committee Report directive to provide 'every opportunity and encouragement' to the disabled." *Id.* at 354; *see also Tsosie*, 651 F.2d at 723 (Tenth Circuit case rejecting as "unduly legalistic and technical" the Secretary's interpretation of VA regulations relating to the calculation of income).

■ In situations in which an agency's interpretation of its own regulations (rather than a statute) is in question, the standard of appellate review is somewhat heightened: the administrative interpretation is controlling unless it is plainly erroneous or inconsistent with the regulation. *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); *see also Lyng v. Payne*, 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986) (applying *Larionoff* rule that agency's construction of its own regulations is entitled to substantial deference); *Wilder v. Prokop*, 846 F.2d 613, 619 (10th Cir.1988) (same). As stated by the Supreme Court in *Gardebring v. Jenkins*,

> [W]hen it is the Secretary's regulation that we are construing, and when there is no claim in this Court that the regulation violates any constitutional or statutory mandate, we are properly hesitant to substitute an alternative reading for the Secretary's unless that alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.

485 U.S. 415, 108 S.Ct. 1306, 1314, 99 L.Ed.2d 515 (1988) (construing Secretary of Health and Human Services' interpretation of regulation requiring public notice of AFDC program requirements).

This judicially acknowleged deference, however, does not preclude judicial review. *Edwards v. Califano*, 619 F.2d 865, 868 (10th Cir.1980) (reversing Secretary's denial of Title II child benefits based on presumption of death). An agency's regulatory interpretation which is not based on expertise in its particular field but is based on general common-law principles is not entitled to any particular deference. *United Transp. Union v. Dole*, 797 F.2d 823, 829–30 (10th Cir.1986); *id.* at 869. Likewise, an agency's departure from past interpretation of a regulation must be well reasoned to prevent it from being overturned on appeal as arbitrary and capricious, because "[w]here an agency fails to distinguish past practice, its actions may indicate that lack of reasoned articulation and responsibility that vitiates the deference the reviewing court would otherwise show." *Acadian Gas Pipeline Sys. v. Federal Energy Regulatory Comm'n*, 878 F.2d 865, 868 (5th Cir.1989); *see also United Transp.*, 797 F.2d at 829; *Midwestern Transp., Inc. v. ICC*, 635 F.2d 771, 777 (10th Cir.1980).

In sum, it is clear that a district court is not bound by an agency's ruling or regulation which the court believes is contrary to the intent of a statute or is arbitrary and capricious. In fact, the Supreme Court has cautioned that a reviewing court must not " 'rubber stamp administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.' " *Bureau of Alcohol, Tobacco & Firearms v. Federal Labor Relations Auth.*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (citation omitted); *see also St. John's Hosp. & School of Nursing, Inc. v. NLRB*, 557 F.2d 1368, 1372 (10th Cir.1977). This equally applies to an agency's construction of its own regulation. *United Transp.*, 797 F.2d at 829 (eschewing "blind adherence" to agency interpretations). Rather, it is the court's duty to enforce the will of Congress, *Chem. Mfrs. Ass'n*, 470 U.S. at 125, 105 S.Ct. at 1107, and not to permit the traditional deference to agency interpretations "to be a device that emasculates the significance of judicial review." *Securities Indus. Ass'n*, 468 U.S. at 143, 104 S.Ct. at 2982. That agencies are bound by the will of Congress is more than an aphorism; it is dogma.

As mentioned above, the plaintiff's posting at Fitzsimmons Army Medical Center was not an employer-employee relationship. Payment received by the plaintiff was made by the Arapahoe County Employment and Training Center as an incentive for him to obtain training in a work environment. The defendant's own ruling, SSR 69–46 holds that where work is not done pursuant to a common law employer-employee relationship and is for the purpose of conditioning patients to return to gainful work, the work is not services in a trial work period within the meaning of 20 C.F.R. § 404.1592. Yet the ruling of the appeals council completely ignores the findings of the administrative law judge which brings this plaintiff's case within the ambit of the defendant's previous ruling. Further, the appeals council decision ignores the purpose of payments to the plaintiff not by an employer but by a social services agency intended to furnish an incentive to obtain a record of consistent work experience with the object of making him employable—something which the entire record persuasively establishes was never realized.

Similarly, the plaintiff was not engaged in a common law employer-employee relationship with Safeway Stores during his on-the-job training experience funded pursuant to the Job Training Partnership Act. Rather, the plaintiff was the recipient of funds subvented by Congress for the express purpose of training individuals with substantial barriers to employment. The expressed intent of Congress in passing the Job Training Partnership Act was to provide job training to disadvantaged individuals such as the plaintiff. 29 U.S.C. § 1501. Employers participating in the Job Training Partnership program are reimbursed up to 50% of wages and other benefits paid in order to compensate them for their training efforts and for the low productivity of the trainees. 29 U.S.C. § 1551(g).

The transcript of testimony before the administrative law judge establishes quite convincingly that the plaintiff's experience at Safeway Stores was indeed "merely training." During the first six months, the plaintiff was supervised by a manager who took a special interest in helping the plaintiff overcome his employment skills deficits. After the six month training period, the same manager continued to provide the plaintiff with the assistance he needed to understand and follow directions. Unfortunately, as the record discloses, another manager undertook plaintiff's supervision and did not provide the degree of support and attention bestowed by his predecessor. It was inevitable that the plaintiff was again fired because of his inability to follow directions with consequent low productivity.

Given the foregoing, it would be inappropriate to defer to the appeals council's determination. It ignores facts found by the administrative law judge. It is contrary to the defendant's previous interpretations. It is not supported by either statute or

regulation and it violates express congressional intent.

The Job Training Partnership Act provides that handicapped individuals shall participate fully in its programs. *See* 29 U.S.C. § 1577(a)(1), (2). Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 prohibiting discrimination on the basis of handicap was made an integral part of the Job Training Partnership Act. The unmistakable intent of Congress in this subject area is to lead individuals facing serious barriers to gainful employment into productive economic lives. If participants in Job Training Partnership Act programs were to lose their disability benefits because of their participation in such programs, then the very people whom Congress seeks to assist would be dissuaded from ever entering the program. It is difficult to imagine an agency decision more contrary to congressional intent.

The decision of the defendant is reversed. The case is remanded with direction to reinstate the decision of the administrative law judge and to recalculate the benefits to which the plaintiff is entitled in accordance with this decision. In making such calculations, the defendant shall give particular attention to 42 U.S.C. § 404(b) and § 425(b).