Harry R. BAILEY

v.

Kenneth S. APFEL Commissioner of Social Security.

Civil Action No. CCB–98–3706.

United States District Court, D. Maryland.

Dec. 2, 1999.

Stephen F. Shea, Willoner, Calabrese & Rosen, PA, College Park, MD, for Plaintiff.

Harry R. Bailey, Baltimore, MD, pro se.

Lynne A. Battaglia, U.S. Atty., Baltimore, MD, Nadira Clarke, Office of U.S. Attorney, Baltimore, MD, for Defendant.

### MEMORANDUM

BREDAR, United States Magistrate Judge.

This action is brought pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's claim for Supplemental Security Income (SSI). The parties have filed cross-motions for summary judgment. No hearing is deemed necessary. Local Rule 105.6.

### I. Procedural History and Background

Plaintiff initially qualified for SSI based upon a mental disability that leaves him unable to engage in substantial gainful activity. (Tr. 185). In the Fall of 1990, Plaintiff enrolled in community college to study computer graphic design. (Tr. 84). In December 1990, Plaintiff's mother died, and from her estate Plaintiff received a series of checks that year totaling $15,020.59. (Tr. 124).

On July 8, 1991, Plaintiff filed a Plan for Achieving Self–Support (PASS) application to shelter the funds that he had received from his mother's estate. (Tr. 84–86). The agency approved the PASS on September 4, 1991, allowing Plaintiff to exclude approximately $14,000.00 from his income and resources, thereby preserving his eligibility for SSI. (Tr. 83).

On December 24, 1991, Plaintiff notified the agency that earlier that month he had received an additional $96,119.10 in proceeds from the sale of real estate in his mother's estate. (Tr. 127). On February 4, 1992, Plaintiff submitted an amended PASS application to allow for an additional exclusion in the amount of $91,160.67. (Tr. 126–28).

On January 30, 1993, the agency informed Plaintiff that it had erred in approving his original PASS, in that his original PASS incorrectly allowed him to use his excluded resources for living expenses. (Tr. 88). Because the original PASS was approved and accepted by Plaintiff in good faith, however, the agency did not modify the original PASS. *Id.* With respect to the amended PASS, though, the agency approved only $59,187.69 ($45,952.00 in living expenses were not permitted). *Id.* The primary significance of this finding was that starting in January 1992 Plaintiff had maintained a balance of $21,016.29 in resources that were not excludable under his PASS, more than the allowable $2,000 resource limit. (Tr. 97). Ownership of non-excludable resources in such an amount defeats SSI eligibility.

On February 19, 1993, Plaintiff requested reconsideration of the agency's determination regarding his amended PASS, (Tr. 90), and continuation of his SSI benefits through his administrative appeal. (Tr. 288–69). At a formal conference between the agency and Plaintiff held on May 13, 1993, the agency determined that its original decision on the amended PASS was correct (i.e., that rent, utilities, food, and clothes could not be exempted under the PASS). (Tr. 92).

In the meantime, on March 3, 1993, the agency notified Plaintiff that because he did not qualify for SSI benefits between December 1991 and February 1993, he received overpayments totaling $6,339.00. (Tr. 200–05). On March 24, 1993, Plaintiff requested a waiver of the agency's overpayment recovery. (Tr. 136). On June 14, 1993, Plaintiff was notified that his request for waiver of recovery of his overpayment was denied. (Tr. 100–02).

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) on two issues: whether he had been overpaid and, if so, whether overpayment should be waived. (Tr. 103–04). At the hearing before the ALJ held on February 8, 1994, Plaintiff was represented by an attorney and a law student. (Tr. 66A–66S). On June 1, 1994, the ALJ issued a written decision in which he found that Plaintiff was not at fault for any overpayments. (Tr. 168–176). The ALJ found, however, that recovery of the overpayment would not defeat the purpose of the SSI program or be against equity and good conscience. *Id.* In addition, the ALJ found that Plaintiff had not relied upon the receipt of SSI to change his position for the worse or relinquish a valuable right. *Id.* The ALJ concluded, therefore, that recovery of the overpayment was appropriate. *Id.*

Plaintiff requested review of the ALJ's decision. (Tr. 177–79). The Appeals Council denied his request on December 3, 1994. (Tr. 180–81).

The Appeals Council reopened the ALJ's decision on May 3, 1995, in response to additional evidence submitted by counsel. (Tr. 182). Specifically, the Appeals Council held that the issue of whether the agency correctly denied the claimant's amended PASS was properly before the ALJ, but that the ALJ did not address this issue in his opinion. *Id.*

A second hearing before an ALJ was held on August 15, 1995. (Tr. 67). Plaintiff was again represented by an attorney and a law student. (Tr. 67–82). In a written decision dated October 23, 1995, the ALJ found that the agency properly concluded that $21,016.21 was not excludable from Plaintiff's resources under his PASS plan, because Plaintiff impermissibly intended to use these funds for his living expenses in his principal place of residence. (Tr. 53). Based on his finding that these resources were non-excludable, the ALJ concluded that Plaintiff was ineligible for SSI benefits and was properly assessed $6,339.00 to recover overpayments. *Id.*

Plaintiff again requested review of the ALJ's decision. (Tr. 38). By an order dated July 28, 1998, the Appeals Council again denied Plaintiff's request for review, (Tr. 20), making the ALJ's decision final and reviewable.

## II. Standard of Review

■ The primary function of this Court on review of the agency's determinations regarding Social Security benefits is not to try plaintiff's claim *de novo,* but rather to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence. *King v. Califano,* 599 F.2d 597 (4th Cir.1979); *Teague v. Califano,* 560 F.2d 615 (4th Cir.1977). Substantial evidence is more than a scintilla but less than a preponderance of the evidence presented. *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir.1966). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and must be sufficient to justify a refusal to direct a verdict was the case before a jury. *Teague v. Califano,* 560 F.2d at 618; *Johnson v. Califano,* 434 F.Supp. 302 (D.Md.1977). If there is substantial evidence to support the agency's findings of fact, then those findings are conclusive. *Jolley v. Weinberger,* 537 F.2d 1179 (4th Cir.1976); *Blalock v. Richardson,* 483 F.2d 773 (4th Cir.1972).

■ However, the inquiry does not end there: "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law," *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987). The deferential standard of review applied to the agency's findings of fact does not apply to conclusions of law or the application of legal standards or procedural rules by the agency. *Wiggins v. Schweiker,* 679 F.2d 1387 (11th Cir. 1982).[1] The Court is empowered by 42

---

1. Purported statutory restrictions on judicial review will not be found absent clear and

convincing evidence of legislative intent. *Lin-*

U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency, "with or without remanding the cause for a rehearing." *Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). The Court is also empowered under that section to remand a case to the agency for consideration of new evidence upon a showing of good cause by the claimant for the failure to have presented the evidence earlier. This type of remand can occur without making any substantive ruling as to the correctness of the agency's ruling. *Id.*

▆ Finally, it must be noted that hearings on applications for Social Security disability entitlement are not adversary proceedings. *Easley v. Finch,* 431 F.2d 1351 (4th Cir.1970). Moreover, the Social Security Act is a remedial statute, and it is to be broadly construed and liberally applied in favor of beneficiaries. *Dorsey v. Bowen,* 828 F.2d 246 (4th Cir.1987). A claimant is entitled to a full and fair hearing, and failure to have such a hearing may constitute sufficient cause to remand the case. *Sims v. Harris,* 631 F.2d 26 (4th Cir.1980).

### III. Analysis

In this appeal, Plaintiff argues that the ALJ's exclusion of the Plaintiff's living expenses from his amended PASS exemption was erroneous as a matter of law. (Paper No. 13). In the alternative, Plaintiff argues that even if Plaintiff's PASS was appropriately rejected and Plaintiff therefore received overpayment of SSI benefits, the ALJ erroneously failed to waive recovery of the overpayment. *Id.* For the reasons discussed below, the Court disagrees with Plaintiff and affirms the ALJ's decision.

*dahl v. Office of Personnel Management,* 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985) (holding that the Civil Service Retirement Act barred only judicial review of factual determinations regarding disability and not review of alleged errors of law and proce-

### A. Exclusion of Ordinary Living Expenses from PASS

In 1972, Congress replaced three separate programs for aid to the aged, blind, and disabled with a single program, SSI. P.L. 92–603, 86 Stat. 1465. Under SSI, every aged, blind, or disabled person whose income and resources fall below a specified level receives benefits from the Social Security Administration. *Id.* (codified at 42 U.S.C. § 1381a (1999)). Congress provided, however, that in determining the resources of an individual, the agency would exclude "such resources of an individual who is blind or disabled and who has a plan for achieving self-support approved by the Secretary, as may be necessary for the fulfillment of such plan." P.L. 92–603, 86 Stat. 1470–71 (codified at 42 U.S.C. §§ 1382a(b)(4)(B)(iv) and 1382b(a)(4)). Neither the House Report nor the text of the statute offers any guidelines for when the agency shall approve a PASS or what expenditures are properly excluded from an individual's resources under his PASS.

In its implementing regulations, the agency reiterates the statutory provision that "[i]f the individual is blind or disabled, resources will not be counted that are identified as necessary to fulfill a plan for achieving self-support which is in writing, has been approved by the Social Security Administration and is being pursued by the individual." 20 C.F.R. § 416.1225 (1999). Like the statute, however, the regulations provide no guidelines for determining when the agency will approve a PASS or what expenditures are properly excluded from an individual's resources.

In reviewing PASS applications, the agency has adopted the undocumented policy of refusing to allow funds spent for an individual's ordinary living expenses to be excluded from that individual's resources

dure). The deferential standard set forth in 42 U.S.C. § 405(g) provides only that findings "as to any fact, if supported by substantial evidence, shall be conclusive ..." and suggests no limits on judicial review of the application of law and procedure by the agency.

(i.e.: they may not be included in the PASS exemption). The agency's internal Program Operations Manual System (POMS) appears to be consistent with this policy. The POMS provides a list of frequently encountered types of planned expenditures that may be approved for PASS exemption if reasonable and necessary to achieve the occupational objective. POMS at SI 00870.025(D). Among the expenditures on this list are "additional costs incurred for room and board away from the individual's principal place of residence required to attend educational, training, employment, trade, or business activities." *Id.* While the Court recognizes that the POMS list is not all-inclusive, the limited nature of this allowable expenditure would suggest that under the POMS, room and board at the individual's principal place of residence may not be approved for PASS exclusion.

■ The Court notes that great deference must be given to an agency's interpretation of a statute that it is entrusted to administer. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In describing the scope of the Court's review of the PASS regulations, one Court has stated:

> The Supreme Court has noted that judicial restraint is especially warranted under some circumstances because of [the agency's] unusually broad authority to administer certain sections of the complex Social Security Act. *Schweiker v. Gray Panthers* 453 U.S. 34, 43, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). In Gray Panthers, for example, the Secretary's interpretation of the law was given "legislative effect" because of an express delegation of power to promulgate regulations on a specific issue. However, in this case, Congress did not "explicitly [leave] a gap for the agency to fill" by means of regulation, *Chevron, U.S.A.,* 104 S.Ct. at 2782. Since rulemaking authority vis-a-vis PASSes is only implicit, the scope of our review is somewhat more searching that the "arbitrary, capricious, or manifestly contrary to the statute" standard of cases such as Gray Panthers. The Court may substitute its construction of a statute for [the agency's] if the agency construction is unreasonable. Thus, although our review may be restrained, it is not without bite.

*Panzarino v. Heckler,* 624 F.Supp. 350, 353–54 (S.D.N.Y.1985).

■ In the present case, the Court notes that the agency's undocumented policy may be entitled to even less deference than formally promulgated regulations. Regardless of what deference the agency's undocumented policies merit, however, the Court finds that the refusal to allow money spent for ordinary living expenses to be included in a PASS exemption flows from a reasonable interpretation of the statute, and that such an interpretation is consistent with the purpose of the SSI and PASS programs. The primary purpose of the SSI program is to provide "[a]n income source for the aged, blind, and disabled whose income and resources are below a specified level." H.Rep. 92–231, 1972 U.S.Code Cong. & Admin.News 4989, 5133. In essence, SSI provides qualified beneficiaries with the basic necessities of living—food, shelter, and clothing.

The goal of the PASS program is to provide "[i]ncentives and opportunities for those able to work or to be rehabilitated that will enable them to escape from their dependent situations." H.Rep. 92–231, 1972 U.S.Code Cong. & Admin.News 4989, 5133. The statute provides that individuals participating in the PASS program may only exclude expenses necessary for the fulfillment of their PASS.

Because an SSI beneficiary receives benefits sufficient to pay for housing, food, and clothing, additional resources dedicated to covering these ordinary living expenses cannot reasonably be considered necessary for the fulfillment of the PASS. The Court agrees with Defendant that it would conflict with the basic purpose of the SSI program and PASS program to allow plaintiff to exempt his own resources to pay for food, shelter and clothing, only to allow him to continue to receive SSI

funds for those very same expenses. (Paper No. 25).

The Court therefore affirms the ALJ's decision and holds that the agency properly denied Plaintiff's amended PASS to the extent that it excluded ordinary living expenses from Plaintiff's resources.

### B. Waiver of Recovery for Overpayment

Plaintiff next argues that the ALJ erred in affirming the agency's decision not to waive recovery of the overpayment made to Plaintiff. The Court finds that substantial evidence as well as reason, logic, and basic fairness all support the ALJ's decision.

The agency's regulations provide that waiver of recovery of an overpayment of SSI benefits may be granted if Plaintiff satisfies two requirements. 20 C.F.R. § 416.550 (1999). First, the overpaid individual must be without fault in connection with an overpayment. *Id.* The ALJ found that Plaintiff was without fault, and Defendant does not appear to contest that finding. (Tr. 53).

Second, Plaintiff must show that recovery of the overpayment would either: 1) defeat the purpose of Title XVI, 2) be against equity and good conscience, or 3) impede efficient or effective administration of Title XVI because of the small amount involved. 20 C.F.R. § 416.550 (1999). The ALJ first found the agency's decision not to waive recovery of the overpayment did not defeat the purpose of Title XVI. (Tr. 51). In support of this conclusion, the ALJ noted that the total overpayment in issue was $6,339.00 and that Plaintiff had received well in excess of $100,000 from his mother's estate, of which he retained approximately $71,000. *Id.* In addition, the ALJ found that "some expenses [listed in Plaintiff's PASS] could be pared back or excluded or money might be borrowed." (Tr. 52) Given these findings, the Court finds there is substantial evidence to support the ALJ's conclusion that repayment of the $6,339.00 would not defeat the purpose of Title XVI.

The ALJ also concluded that recovery of the $6,339.00 would not be against equity and good conscience. The regulations provide that "[a]djustment or recovery is considered to be against equity and good conscience if an individual changed his or her position for the worse or relinquished a valuable right because of reliance upon a notice that payment would be made or because of the incorrect payment itself." 20 C.F.R. § 416.554. The ALJ observed that Plaintiff allocated $50,125.00 for computer-related expenses in his amended PASS. (Tr. 52). Based on the amount of these expenditures, the ALJ concluded that the impetus behind Plaintiff's decision to aggressively pursue a college degree was his significant inheritance and not "the relatively minimal amounts paid to claimant under the PASS provisions." Given these findings, the Court finds there is substantial evidence to support the ALJ's conclusion that repayment of the $6,339.00 would not be against equity and good conscience.

Regarding the third factor, neither party suggests that $6,339.00 is so small an amount that recovery would impede efficient administration of Title XVI.

For the foregoing reasons, an Order will be entered affirming the agency's decision.