KLICKITAT COUNTY, a municipal corporation; City of Washougal, a municipal corporation; SDS Lumber Co., a Washington corporation; Klickitat County Livestock Growers Association, a Washington unincorporated association; Ellett Construction Co., an Oregon corporation; and Dan Gunkel, an individual, Plaintiffs,

v.

COLUMBIA RIVER GORGE COMMISSION, an agency of the States of Washington and Oregon; and U.S. Forest Service, an agency of the U.S. Department of Agriculture, Defendants,

Friends of the Columbia Gorge, Defendant–Intervenor.

No. CV–91–3027–AAM.

United States District Court, E.D. Washington.

June 14, 1991.

Michael E. Haglund, Haglund & Kirtley, Portland, Or., Ted A. Roy, Roy & Pell, Yakima, Wash., for plaintiffs.

Lawrence Watters, Asst. Atty. Gen., Sp. Litigation Div., Olympia, Wash., for defendant Columbia River Gorge Com'n.

Stuart Schoenburg, Dept. of Justice, Environmental & Natural Resources Div., Washington, D.C., Jocelyn Somers, Office of General Counsel, U.S. Dept. of Agr., Portland, Or., for defendant U.S. Forest Service.

Gary K. Kahn, Reeves, Kahn & Eder, Portland, Or., for defendant-intervenor Friends of the Columbia Gorge.

## ORDER DENYING PERMANENT INJUNCTIVE RELIEF; DISMISSING CLAIMS AGAINST THE GORGE COMMISSION AND U.S. FOREST SERVICE AND THE SECRETARY OF AGRICULTURE

McDONALD, District Judge.

On Thursday, June 5, 1991, a hearing on the merits was held in the above captioned matter to determine whether permanent injunctive relief would be granted. Michael Haglund appeared on behalf of the plaintiffs. Lawrence Watters, Assistant Attorney General for the State of Washington was present, representing the Columbia River Gorge Commission. Stuart Schoenburg, Department of Justice, Environment and Natural Resources Division and Jocelyn Somers, Office of General Counsel, United States Department of Agriculture were present on behalf of the Forest Service.

### I

### FACTS AND PROCEDURAL CONTEXT

This action is brought under the Columbia River Gorge National Scenic Area Act, 16 U.S.C. § 544 et seq. The Act provides a system of land use management for areas designated part of the "National Scenic Area". The Scenic Area is divided into three areas: 1) Exempt urban areas, 2) General Management Areas (GMAs), and 3) Special Management Areas (SMAs). The Special Management Areas are administered by the Forest Service. The General Management Areas are administered by the Columbia River Gorge Commission (Commission), a bi-state compact between Oregon and Washington.

The Commission is responsible for developing a draft management plan for the General Management Areas, while the Forest Service is responsible for developing a draft management plan for the Special Management Areas. The Act provides for studies and public comment in the development of these plans. These plans are then incorporated into one final plan for the National Scenic Area. The Commission adopts the final plan. The Secretary of Agriculture may veto the plan at which point the Commission may revise the plan or override the Secretary's veto. Once the final plan is adopted, counties within the Scenic Areas must adopt land use ordinances consistent with the management plan.

At the time of the hearing on the preliminary injunction, both the Forest Service and the Commission had developed draft management plans. Neither draft plan included an Environmental Impact Statement (EIS) as required for major federal actions significantly effecting the environment under the Washington State Environmental Policy Act (SEPA), The National Environmental Policy Act (NEPA) and for the preparation of a forest plan under the National Forest Management Act (NFMA).[1]

The plaintiffs in this action, Klickitat County, City of Washougal, SDS Lumber Co., Ellet construction, Dan Gunkel, and the Klickitat County Livestock Growers Association are seeking an injunction against both the Forest Service and the Commission to enjoin them from adopting a final management plan under their current procedures and to require them to fulfill

---

1. The pertinent statutes are RCW 43.21C.030, 42 U.S.C. § 4332(2)(E), 42 U.S.C. § 4321, 16 U.S.C. § 1604.

the requirements of SEPA/NEPA/NFMA in the development of this plan. Specifically, the plaintiffs seek to compel the Commission to prepare an Environmental Impact Statement and the Forest Service to comply with certain planning regulations of the National Forest Management Act (36 CFR 219.12(f) and (g)) and engage in a discussion of alternatives under 42 U.S.C. § 4332(2)(E) prior to adopting a final plan. The plaintiffs' principal objections are that the agencies in developing their draft management plans have not taken into account economic and social impacts of the plan or considered a range of alternatives. The plaintiffs are suing under the Citizens Suit provision of the National Scenic Area Act, 16 U.S.C. § 544m(b)(2)(A) for the Commission's and Forest Service's failure to perform non discretionary duties to comply with SEPA/NEPA/NFMA in developing their draft management plans.[2]

On May 2, 1991, the court granted the plaintiffs' motion for a preliminary injunction and entered an order enjoining the Commission and Forest Service from continuing their current planning procedures until the hearing on the merits in June.[3]

## II

## PRELIMINARY MOTIONS

### Overlength Briefs

All parties' motions to file overlength briefs in this action are HEREBY GRANTED.

### Plaintiffs' Motion to Amend Complaint

The plaintiffs' Motion to Amend their Complaint to add the Secretary of Agriculture as a defendant is HEREBY GRANTED. Rule 15 of the Federal Rules of Civil Procedure is to be interpreted broadly so as to allow amendments. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

### Judicial Notice

The Commission's Motions for the court to take Judicial Notice pursuant to FRE 201(d) of legislative history and of the expertise of the Columbia River Gorge Commission are HEREBY DENIED. The Commission is asking the court to take judicial notice of "legislative facts" and legal conclusions which is precluded under FRE 201(d).

### Subject Matter Jurisdiction

The Forest Service's Motion to Dismiss for lack of subject matter jurisdiction for improper service is WITHDRAWN as a result of the plaintiffs curing the defect in service.

### 60–Day Notice Requirement

The Forest Service has moved the court to dismiss all the plaintiffs except SDS Lumber from this suit for failure to give the required 60 day notice prior to suit. The Commission has also raised this issue.

The Ninth Circuit and the Supreme Court have addressed the 60 day notice requirement of RCRA (Resource Conservation and Recovery Act) for bringing suit under the citizen suit provision of that act. *Hallstrom v. Tillamook County*, 844 F.2d 598 (9th Cir.1987) *aff'd* 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1987). The Ninth Circuit held that RCRA's 60 day notice requirement, 42 U.S.C. § 6972(b) was jurisdictional, not procedural, and failure to comply required the dismissal of the action for lack of subject matter jurisdiction.

■ The Supreme Court affirmed the Ninth Circuit decision. The Court however, explicitly declined to rule on whether the requirement was jurisdictional or procedural, holding only that the 60 day notice and delay requirement was a mandatory condition precedent to filing suit and that where a party fails to meet this requirement, the district court must dismiss the action as barred by the terms of the stat-

---

**2.** The applicable sections which the plaintiffs claim compel compliance with these statutes are 16 U.S.C. § 544c(b); § 544*o* (f)(2); § 544f(a)(1).

**3.** The court did not grant the broad relief requested by the plaintiffs. The court did not decide that the Commission and Forest Service

must comply with SEPA/NEPA/NFMA. The court concluded only that in finding a likelihood of success on the merits and in balancing the hardships, that preliminary injunctive relief was necessary to prevent harm to the plaintiffs.

ute. The purpose of the 60 day notice requirement is to give the offending agency time to investigate the situation and the opportunity to work out a mutually acceptable way to proceed without resorting to court. *Id.* Nonjudicial resolution of conflicts is more likely if parties consider their interests and positions in a non-adversarial setting before suit is filed. Litigation should be a last resort only after other efforts have failed. *Id. See also Roe v. Wert,* 706 F.Supp. 788 (W.D.Okl.1989), *Thompson v. Thomas,* 680 F.Supp. 1 (D.D.C.1987).

On February 7, 1991 notice was given to the Forest Service on behalf of SDS Lumber Company and Stevenson Co-ply "as well as any other similarly situated persons, corporation or public body." With respect to the Commission, no formal notice was ever given on behalf of any of the plaintiffs. The plaintiffs contend that their written comments and oral testimony in front of the Commission satisfy the 60 day notice requirement. (Ct.Rec. 5, 25, 26, 27).

The court realizes that given the strict construction the Ninth Circuit has given notice requirements, these comments and testimony in front of the commission and the phrase "as well as any other similarly situated persons, corporation or public body" probably do not constitute "pre-suit notice". It is doubtful whether the "immediate legal interest" exception requirement is even met since there never was any actual formal notice given.

However, it seems to the court that the purpose of the rule has been served. The plaintiffs have voiced their concerns that the Commission should comply with SEPA in testimony and written comments. The Commission has presumably considered such input and has decided that they do not and will not comply with SEPA.

The same is true of notice to the Forest Service. SDS Lumber gave formal notice of suit along with a detailed legal and factual analysis of their complaints. The fact that other plaintiffs have joined in the litigation does not change the fact that the Forest Service was aware of the impending lawsuit and the basis for the claim.

Moreover, all the parties to this action have committed a substantial amount of time and energy to this litigation. To dismiss the claim now because of a failure to strictly comply with a 60 day notice requirement would be a poor and ineffective use of judicial resources. The court feels that its time is much better used and the parties better served by considering the more important issues involved in the merits of this litigation.

Accordingly, the Forest Service's Motion to dismiss for failure to comply with the 60 day notice requirement is HEREBY DENIED.

*Motions to Strike*

The Forest Service's motion to strike plaintiffs' entire consolidated trial memorandum is HEREBY DENIED.

Both defendants have moved the court to strike the deposition of Richard Benner (Attachment to Ct.Rec. 55), the Second Affidavit of Joan Frey (Ct.Rec. 57), and the Affidavit of Steven B. Anderson (Ct.Rec. 56). These affidavits and deposition pertain to the perceived inadequacies of the planning process undertaken by the Forest Service and the Commission and the failure of either to address the takings implications of the Scenic Area Management Plan. For the reasons that follow, the defendants' motions are HEREBY GRANTED.

Most of the issues before this court are purely legal. With respect to the Commission, the issue is a narrow one of statutory construction, whether the Gorge Commission must comply with the SEPA requirement of preparing an Environmental Impact Statement in developing the management plan for the general management areas. Whether or not the Gorge Commission has complied with the EIS requirement of SEPA is not an issue before this court at this time. The Commission has never claimed that they have complied with SEPA. The Commission made a decision in their meeting of March 26, 1991 that they were not required to comply with the SEPA requirement of an EIS in developing the management plan for the general management areas. The planning process used by

the Commission thus far is entirely irrelevant to the claim brought before this court at this time.

The only potential factual issue with respect to the Forest Service is whether they have complied with the provisions that the plaintiffs allege they must follow. The Forest Service has argued that it need not comply with these provisions, but that it has fulfilled the obligations imposed by these sections. This issue is not properly decided through resort to testimony and affidavits.

■ If the court were to decide that the Forest Service must comply with these provisions of NEPA and NFMA, this is an administrative review case and in determining whether the Forest Service considered a reasonable range of alternatives within the mandates of NEPA and the National Scenic Area Act, the court must look to the administrative record. Judicial review of agency action, including challenges to NEPA processes, has been confined to the record before the administrative body at the time of its decision. *Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir.1988) *corrected* 867 F.2d 1244; *Friends of the Earth v. Hintz,* 800 F.2d 822, 827–829 (9th Cir.1986). *Asarco Inc. v. U.S.E.P.A.,* 616 F.2d 1153 (9th Cir.1980). The district court may expand review beyond the administrative record or permit discovery when the administrative record is not adequate to explain the agency's action. *Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir.1988); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). However, the starting point is still the administrative record:

> "The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."

*Friends of the Earth v. Hintz,* 800 F.2d 822, 827–829 (9th Cir.1986). Generally litigation affidavits are considered "post hoc" rationalizations and an inadequate basis for review. *Citizens to Preserve Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825.

When the record is inadequate, the proper course is to remand for further development of the record at the administrative level. *Wicker Park Hist. Dist. Preservation Fund v. Pierce,* 565 F.Supp. 1066 (N.D.Ill.1982).

■ Even when the reviewing court finds it necessary to go outside the administrative record,

> "it should consider evidence relevant to the substantive merits of the agency action only for background information or for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision ... If the court determines that the agency's course of inquiry was insufficient or inadequate, it should remand the matter to the agency for further consideration and not compensate for the agency's dereliction by undertaking its own inquiry into the merits."

*Asarco* at 1160. The court may also inquire outside the administrative record when it appears that the agency has relied on documents or materials not included in the record. *Animal Defense Council v. Hodel,* 867 F.2d 1244 (9th Cir.1989).

■ At present there is not a sufficient administrative record before this court. However, it does not seem to the court that this is the time to resort to affidavits and discovery in determining whether the Forest Service complied with the alternatives requirements of NFMA and NEPA. If the court were to determine that the Forest Service is required to comply with these provisions, the proper course would be to allow the Forest Service to continue in their procedures in developing the plan. When the planning process is complete and the administrative record is sufficiently developed, if at that point the court felt resort to discovery or affidavits were necessary then the court could require them. As discussed, *infra,* the court feels that review of the Forest Service's compliance with these provisions is premature. Even if the court felt the issue was ripe for review now, the proper course of action would be to remand for the development of

the record at the administrative level prior to resorting to affidavits and testimony.

*Protective Order*

The Forest Service's Motion for a Protective Order is HEREBY GRANTED. Any factual testimony is irrelevant to the issues properly before the court at this time, as discussed *supra.*

*Motion in Limine*

The Forest Service's Motion in Limine to prevent the plaintiff from discussing the takings issue at oral argument is HEREBY DENIED. Although the court feels the factual issues are irrelevant to this claim, the court will not limit the plaintiffs' oral argument in this way.

## III

### PERMANENT INJUNCTIVE RELIEF

■ The findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits. *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). The decision to grant a preliminary injunction does not establish the "law of the case" as to estop any of the parties from arguing the same issues again, nor the court from considering them at the trial on the merits. Wright and Miller *Federal Practice and Procedure* § 2950; *Sierra Club v. Morton,* 348 F.Supp. 219 (N.D.Cal.1972).

■ In determining whether to grant permanent injunctive relief, the first question is whether the plaintiff has established a right to such relief based on the entire record before the court. Wright and Miller *Federal Practice and Procedure* § 2942. The right to relief must be clear. An injunction will not be awarded in doubtful cases. *Id., Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union No. 18, Intern. Typographical Union,* 471 F.2d 872 (6th Cir.1972).

■ Absent "unusual circumstances", The proper remedy for a substantial procedural violation of NEPA is an injunction. *Bob Marshall Alliance v. Hodel,* 852 F.2d 1223, 1230 (9th Cir.1988); *Thomas v. Peterson,* 753 F.2d 754 (9th Cir.1985). The "unusual circumstances" that have led a court to refrain from enjoining a project or plan from proceeding without compliance with NEPA have been the existence of irreparable harm that would flow from injunction of the project. *Thomas* at 764.

## IV

### CLAIM AGAINST THE COMMISSION

Whether the Commission must comply with the Washington State Environmental Policy Act (SEPA) procedures in preparing its management plan for the general management areas, specifically the Environmental Impact Statement (EIS) requirement, is determined by resolution of a very narrow issue of statutory construction.

It is clear to the court that SEPA cannot be imposed upon the Commission unless the compact specifically reserved the right to do so. The holdings of *Seattle Master Builders v. Pacific N.W. Elec. Power,* 786 F.2d 1359 (9th Cir.1986) and *People v. City of South Lake Tahoe,* 466 F.Supp. 527, 537 (E.D.Cal.1978) are clear in this respect.

The pertinent provision which the plaintiffs claim requires the Commission to utilize SEPA procedures in developing the draft management plan for the general management areas is found at 16 U.S.C. § 544c(b):

"(b) *Applicable Law*

For the purposes of providing a uniform system of laws, which, in addition to this Act are applicable to the Commission, the Commission shall adopt regulations relating to administrative procedure, the making of contracts, conflicts-of-interest, financial advisory committees and *disclosure of information* consistent with the more restrictive *statutory* provisions of either State." (emphasis added).

The Commission maintains that the term "disclosure of information" does not refer to an environmental statute. They contend that this "applicable law" section refers to the operation of the agency in administrative matters and as such, "disclosure of information" refers to regulations relating

to the release of public records. The plaintiffs claim that the SEPA EIS requirement is an administrative matter and the term "disclosure of information" is a direction to use SEPA, an environmental full disclosure law.

■ The process of judicial review of an agency's construction of a statute has two steps. First, the court must consider whether Congress has addressed the precise question at issue, either in the statutory language or in its legislative history. *Lamkin v. Bowen*, 721 F.Supp. 263 (D.Colo.1989). If so, Congress' interpretation is controlling. *Id.* If the statute is silent or ambiguous with respect to a specific issue, the court must determine whether the agency's ruling on that issue is based on a permissible construction of the statute. *Id.* The court need not find that the construction is the only permissible construction which the agency might have adopted but rather that its understanding of the statute is sufficiently rational to preclude a court from substituting its judgment for that of the agency. *Chemical Mfrs. Ass'n v. Natural Resources Defense Council*, 470 U.S. 116, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985), *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The plaintiffs have argued that the Commission's interpretation is not entitled to deference as the Commission has only been in existence a short period of time and has not been routinely called upon to interpret the Act.

■ Agency interpretations are accorded varying degrees of deference based upon the timing and consistency of the agency's position and the nature of its expertise. *Lynch v. Dawson*, 820 F.2d 1014, 1020 (9th Cir.1987); *Batterson v. Francis*, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977). It appears from the record that the plaintiffs are correct in that the Commission only considered the specific issue of whether they had to comply with SEPA at a fairly recent meeting. However, they had obviously interpreted this disputed portion of the statute when they issued their rules for administrative procedure. The plaintiffs characterization of the lack of expertise of the members of the Commission is mistaken. The members all have various experience with land use management. (Ct.Rec. 63).

While the Commission construction of the statute probably should not be accorded the level of deference accorded the EPA in the *Chevron* or *Chemical Manufacturers* cases, the agency is entitled to some level of deference. A Washington Superior court has held that the Commission's decisions under the Gorge Act should be given great weight. *Tom Tucker v. Columbia River Gorge Commission* (Skamania Superior Court; 90-2-0016-0; Jan. 3, 1991). This decision is certainly not mandatory authority in federal court but it is persuasive. Moreover, the Ninth Circuit has indicated that an agency's own construction of the compact which created it should be followed unless there are compelling indications that it is wrong. *People of St. of Cal. ex rel. Younger v. Tahoe Regional Planning Agency*, 516 F.2d 215 (9th Cir. 1975); *Cal. Tahoe Regional Planning v. Sahara Tahoe Corp.*, 504 F.Supp. 751 (D.Nev.1980).

As is discussed, *infra*, it is not even necessary to reach this issue as the intent of Congress is clear that the "disclosure of information" reference is to the release of public records and other freedom of information type issues and not to an environmental full disclosure law which requires the preparation of an environmental impact statement. In construing a statute, if the intent of Congress is clear, the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ The legislative Section by Section Analysis of the Gorge Act provides:

"The Commission must adopt a uniform set of laws *relating to administrative procedure and the functioning of the Commission.* In order to ensure that the Commission members are following

the laws of his or her own state, the commission is directed to adopt the law of either Washington or Oregon, whichever is more restrictive in scope. A majority of the appointed members of the Commission will constitute a quorum." (emphasis added).

132 Cong.Rec. 15628. Although "disclosure of information" is not specifically defined in the Act or in its legislative history, within the context of administrative procedure laws, the term "disclosure of information" refers to laws relating to the release of public records. Public disclosure laws are very different than environmental full disclosure laws requiring environmental impact statements. Public disclosure laws generally require disclosure of information, and do not require agencies to generate new information. *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 161–162, 95 S.Ct. 1504, 1521–1522, 44 L.Ed.2d 29 (1975). Environmental laws, like SEPA which compel the preparation of an EIS involve detailed studies and comparisons and require agencies to generate new information.

It is pertinent that the disputed "applicable law" section is in the section of the Act entitled "Columbia River Gorge Commission", § 544c, which provides for establishment of the Commission, its membership, advisory committees to assist the Commission, and other modes by which the Commission may obtain assistance, as opposed to the Section entitled "Scenic Area Management Plan", § 544d which provides for the procedures to be used in the development of the management plan. If Congress intended the Commission to comply with SEPA procedures in developing the management plan, it seems to the court they would have placed this directive in the section of the Act dealing with the development of the management plan, § 544d.

Moreover, the court doubts that Congress would specifically exempt the Forest Service from the NEPA Environmental Impact Statement and Environmental Assessment requirements and then by implication require the Commission to follow the EIS requirement of SEPA. § 544*o* (f)(1).

The legislative history of the Pacific Northwest Electric Power Planning and Conservation Act (PNWEPPCA) also supports the interpretation of the Commission. This act created a regional agency consisting of four states (including Washington and Oregon) and the Bonneville Power Administration. The Pacific Northwest Electric Power and Conservation Planning Council was authorized to prepare and adopt a regional conservation and electric power plan and to develop programs related to energy conservation, reviewable resources, and other resources and to protect, mitigate and enhance fish and wildlife resources. 16 U.S.C. § 839 *et seq.* This statute contains an almost identical section under the broader heading "Pacific Northwest Electric Power and Conservation Planning Council; establishment and operation as regional agency":

"(4) For the purpose of providing a uniform system of laws, in addition to this chapter, applicable to the council relating to the making of contracts, meetings of the council, advisory committees, disclosure of information, open meetings of the council, advisory committees, *disclosure of information,* judicial review of council functions and actions under this chapter, and related matters, the federal laws applicable to such matters in the case of the Bonneville Power Administration shall apply to the council to the extent appropriate ..." (emphasis added)

16 U.S.C. § 839b(a)(1), (2), (4). Representative Dingell stated on the floor of the House of Representatives as follows:

"Because of the possibility of conflicts of laws between the states, it was not possible to make State laws apply to the operation of the council, except in the case of appointments and salaries. Clearly the provisions of this act apply to the council. The council, according to the agreement above, must abide by all of the provisions of this Act. However, there are other provisions of law that should also be applied in a uniform manner. Thus, the bill provides that federal laws relative to the *making of contracts, conflicts of interest, financial disclosure, advisory*

*committees, disclosure of information,* judicial review of council functions and actions under this act and related matters, apply to the council in the same manner and to the same extent as they apply to the BPA. *Some of these laws would be the Freedom of Information Act, the Federal Advisory Committee Act, the Sunshine Act, the Ethics in Government Act,* and related statutes." (emphasis added).

Cong.Rec. H 10681 (Nov. 17, 1980)

Representative Dingell also stated:

"In the case of *open meetings,* the law is applicable to FERC which is also a collegiate body would apply to the council. Thus, the council, in the case of *open meetings,* must operate in the same manner as FERC. *The concept here is to insure that the decisions of the council are made in public and that the records of the council are kept open subject to normal disclosure laws. In short, the intent is to apply the Sunshine Provisions of 5 U.S.C. 552b to this council to the greatest extent possible, while recognizing of course, that the law applies primarily to agencies whose members are presidentially appointed and confirmed by the Senate.* (emphasis added).

Cong.Rec. H 10682 (Nov. 17, 1980)

While the applicable provision under federal law dealing with "disclosure of information" is the Freedom of Information Act, the Gorge Act directs the Commission to the applicable state law. Washington and Oregon have public record laws which relate to disclosure of government reports, papers and documents which are similar to the provisions regarding the release of public records under the Freedom of Information Act. *See* RCW 42.17.250; ORS 192.-420–192.500.

It is clear from the legislative history of PNWEPPCA that the term "disclosure of information" referred to the keeping and release of public records. The council was directed to the Freedom of Information Act, the Federal Advisory Committee Act, the Sunshine Act, and the Ethics in Government Act, not to an environmental statute.

The court is mindful that it must be wary in using the legislative history of an analogous statute to interpret a different statute. *Anderson v. Janovich,* 543 F.Supp. 1124, 1129 (W.D.Wash.1982). However, this legislative history is not completely unhelpful to the court in interpreting the National Scenic Act. It involves legislation affecting the same area, and it is not unreasonable to assume that the framers of the Gorge Act had the PNWEPPCA in mind when drafting the Gorge Act, especially since the portion at issue in the National Scenic Act is almost word for word the same as the section in PNWEPPCA.

The language of the "applicable law" section within the context of the statute along with the legislative history of the Gorge Act and the legislative history of the PNWEPPCA clearly indicate that the intent of congress in directing the Commission to develop regulations with respect to "disclosure of information" was to direct the Commission to adopt the Oregon or Washington law on the release of public records, not to incorporate an environmental full disclosure law requiring the type of detailed studies and analysis involved in the preparation of an EIS.

Moreover, both *Seattle Master Builders* and *Tahoe* require that the compact *specifically* reserve the right to use state law. The disputed provision is far from a *specific* reservation of the right to impose SEPA procedures on the Commission. At the very least, the statute is somewhat ambiguous, in which the agency is entitled to some deference in their interpretation, and as discussed, their interpretation is more than reasonable.

For these reasons, IT IS HEREBY ORDERED that permanent injunctive relief is DENIED, the Preliminary Injunction entered on May 2, 1991 is VACATED, and the complaint and claims herein as they relate to the Columbia River Gorge Commission are DISMISSED WITH PREJUDICE.

## V

## CLAIMS AGAINST THE FOREST SERVICE

█ It is clear to the court that the Forest Service does not have to prepare an

Environmental Impact Statement (EIS) or an Environmental Assessment (EA) in their preparation of the draft management plan. They are specifically exempted from these obligations under 16 U.S.C. 544o(f)(1). Although the plaintiffs originally took the position that notwithstanding the exemption from NEPA, the Forest Service still had to prepare an EIS under the NFMA, they now concede that under the terms of the Gorge Act, an EIS is not required under either NFMA or NEPA.

The plaintiffs contend that although the Forest Service is exempted from preparation of an EA and EIS it still must comply with 42 U.S.C. § 4332(2)(E) and certain planning regulations of the National Forest Management Act (NFMA), 36 CFR 219.-12(f) and (g).

The starting point for an issue involving statutory construction is the language of the statute itself. *Watt v. Alaska*, 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). Where two statutes are involved, legislative intent to repeal an earlier statute must be clear and manifest. *Blackfeet Indian Tribe v. Montana Power Co.*, 838 F.2d 1055, 1058 (9th Cir.1988). In the absence of such intent, apparently conflicting statutes must be read to give effect to each if this can be done while preserving their sense and purpose. *Watt* 451 U.S. at 267, 101 S.Ct. at 1678; *Blackfeet Indian Tribe v. Montana Power Co.*, 838 F.2d 1055, 1058 (9th Cir.1988).

*National Environmental Policy Act*

Under 16 U.S.C. § 544o(f)(2) of the Gorge Act, the Forest Service must comply with NEPA except as provided for in paragraph (1) (exemption from EA and EIS).

42 U.S.C. § 4332(2)(E) of NEPA provides: "All agencies of the Federal Government shall ... study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resource."

It is not altogether clear to the court that the exemption in 16 U.S.C. § 544o (f)(1) does not also exempt the Forest Service from the discussion of alternatives require-

ment under § 4332(2)(E). The exemption in 16 U.S.C. § 544o (f)(1) alleviates the Forest Service from preparing an Environmental Assessment as well as an Environmental Impact Statement. Neither the statute or the CEQ regulations clearly specify where in the NEPA process § 4332(2)(E) comes in to play.

40 CFR § 1508.10 defines "environmental document" as including:

"the documents specified in § 1508.9 (environmental assessment), § 1508.11 (environmental impact statement), § 1508.13 (finding of no significant impact), and § 1508.22 (notice of intent)".

Although this is not necessarily meant to be an exclusive list, § 4332(2)(E) is not referred to here. Section 4332(2)(E) is referred to in CFR 1508.9 which discusses the environmental assessment. This section provides:

"Environmental Assessment"

(a) Means a concise public document for which a Federal agency is responsible that serves to:

(1) Briefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact.

(2) Aid an agency's compliance with the Act when no environmental impact statement is necessary.

(3) Facilitate preparation of a statement when one is necessary.

(b) Shall include brief discussions of the need for the proposal, of alternatives as required by section 102(2)(E), of the environmental impacts of the proposed action and alternatives, and a listing of agencies and persons consulted.

It appears from these sections that the § 4332(2)(E) mandate to develop alternatives in any proposal which involves unresolved conflicts concerning alternative uses of available resources, is to be discussed as part of the Environmental Assessment. Moreover, this section is discussed in the context of an Environmental Assessment in the relevant cases. *See Bob Marshall Alliance v. Hodel*, 852 F.2d 1223 (9th Cir.1988); *City of New York v. United States De-*

*partment of Transportation,* 715 F.2d 732 (2nd Cir.1983).[4]

The court has substantial doubt that Congress would exempt the Forest Service from preparation of an Environmental Impact Statement *and* an Environmental Assessment and still expect the Forest Service to conduct the study of alternatives under § 4332(2)(E).

*National Forest Management Act*

The National Forest Management Act planning procedures enumerated in 36 CFR 219.12(f) and (g) require a detailed discussion of alternatives and discussion of the estimated effects of those alternatives.

The plaintiffs argue that the requirements of 36 CFR 219.12(f) and (g) are not inconsistent with the terms of the Gorge Act and therefore must be followed.

The "Scope and Applicability" section of the Code of Federal Regulations for the NFMA provides:

"The regulations in this subpart apply to the National Forest System, which includes special areas, such as wilderness, wild and scenic rivers, national recreation areas, and national trails. Whenever the special area authorities require additional planning, the planning process under this subpart shall be subject to those authorities.

(a) *Unless inconsistent* with special area authorities, requirements for additional planning for special areas shall be met through plans required under this subpart.

(b) *If,* in a particular case, *special area authorities require the preparation of a special area plan,* the direction in any such plan *may be incorporated without modification* in plans pre-

pared under this subpart. (emphasis added).

36 CFR 219.2.

Section (a) specifically eliminates special area plans from complying with the planning procedures required under NFMA when the planning requirements for the special area are inconsistent with the planning requirements under the general NFMA statute and its regulations. Plaintiffs argue that the alternatives provisions of 219.12(f) and (g) are consistent with the Gorge Act.

It seems to the court, however, that these planning requirements are inconsistent with the EIS and EA exemption at 16 U.S.C. § 544*o* (f)(1). Section 36 CFR 219.12(g) (the section plaintiffs would impose on the Forest Service) provides:

"(g) Estimated effects of alternatives. The physical, biological, economic, and social effects of implementing each alternative considered in detail shall be estimated and compared *according to NEPA procedures. These effects include those described in NEPA procedures* (40 CFR 15.02.14 and 15.02.16) and at least the following: ..."

40 CFR § 1502.14 and § 1502.16 give instruction on preparing the alternatives portion of the EIS under NEPA. The alternatives Section "is the heart of the environmental impact statement." § 1502.14. The planning requirements that the plaintiffs would have the Forest Service follow in developing the draft management plan for the special management areas involves that portion of the EIS which involves a discussion of alternatives.

This is clearly inconsistent with special area authorities, namely the EIS and EA exemption under 16 U.S.C. § 544*o* (f)(1).

---

**4.** In *Bob Marshall Alliance v. Hodel,* 852 F.2d 1223, 1223 (9th Cir.1988), the court began its discussion by explaining the NEPA procedures:

"NEPA mandates the preparation of an environmental impact statement ("EIS") for all 'major Federal actions significantly affecting the quality of the human environment.' § 4332(2)(C). In order to determine whether an EIS is required the federal agency concerned prepares an environmental assessment. 40 CFR § 1508.9 (1987). Based on that assessment the agency may conclude that the action will not

significantly affect the environment and issue a "Finding of No Significant Impact" ("FONSI") in lieu of an EIS. *Id.* § 1508.13....

Second, NEPA also requires that federal agencies 'study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources' 42 U.S.C. § 4332(2)(E) (1982); *see* 40 CFR § 1508.9(b) (1987) (environmental assessment must include discussion of alternatives)."

**1432**

The court doubts that Congress would specifically exempt the Forest Service from preparing an Environmental Assessment and an Environmental Impact Statement and then require the Forest Service to comply with planning authorities which require a substantial portion of the EIS be prepared.

*Conclusion*

Because the court has substantial doubts that the Forest Service is required to comply with these provisions under the terms of the Gorge Act, the plaintiffs have not met their burden in establishing a clear right to have the Forest Service comply with these provisions of NEPA and NFMA.

Even if the court were to decide that the Forest Service is required to comply with these provisions, the Forest Service has argued that they have considered alternatives to the extent allowable under the limits imposed by the National Scenic Area Act. The plaintiffs challenge the sufficiency of that consideration of alternatives. In order to make the determination of whether the Forest Service has complied with the alternatives requirement, the court must look to whether the Forest Service's decisions regarding which alternatives to explore was reasonable. *City of New York v. United States Department of Transportation,* 715 F.2d 732 (2nd Cir.1983). Such an analysis must include whether the Service's interpretation of the legislative limits imposed by the Gorge Act on the alternatives to be studied was reasonable. *Id.*

■ A challenge to the sufficiency of the Forest Service's management plan is premature as no final agency document has yet been prepared. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The Forest Service has not yet completed the procedures used in developing the management plan. As the Forest Service notes, future public comment could generate the discussion of other alternatives.

For these reasons, IT IS HEREBY ORDERED that permanent injunctive relief against the Forest Service and the Secretary of Agriculture is DENIED. The Pre-liminary Injunction entered on May 2, 1991 is VACATED. The complaint and claims contained herein as they relate to the Forest Service and the Secretary of Agriculture are DISMISSED WITHOUT PREJUDICE AS UNRIPE.

IT IS SO ORDERED.