**PAINEWEBBER INCOME PROPERTIES THREE LIMITED PARTNERSHIP, a Delaware Limited partnership, qualified to do business in Florida, By and Through its General Partner, THIRD INCOME PROPERTIES, INC., a Delaware Corporation, Plaintiff,**

v.

**MOBIL OIL CORPORATION, a New York Corporation, Defendant.**

No. 92–1839–Civ–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

April 28, 1995.

Order Denying Reconsideration
June 23, 1995.

Clifford A. Schulman, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quental, P.A., Miami, FL, Byron G. Petersen, Siegfried, Kipnis, Rivera, Lerner, De La Torre and Petersen, Fort Lauderdale, FL, for Painewebber Income Properties Three Limited Partnership and Third Income Properties, Inc.

Roger Steven Kobert, Todd R. Legon, Mark A. Cohen & Associates, P.A., Miami, FL, for Mobil Oil Corporation.

KOVACHEVICH, District Judge.

This cause is before the Court on defendant, Mobil Oil Corporation's (hereinafter referred to as "MOBIL") Motion for Partial Summary Judgment as to Statutory Claims and for Diminution in Value Damages (Dkt. No. 60); response (Dkt. No. 72); and all supporting documents.

Defendant MOBIL seeks relief pursuant to Rule 56, Fed.R.Civ.P., for partial summary judgment as to statutory claims and for diminution in value damages sought by Plaintiff, Painewebber Income Properties Three Limited Partnership (hereinafter referred to as "Painewebber") in a multi-count Supplemented and Amended Complaint (hereinafter referred to as "Complaint") (Dkt. No. 1 and Dkt. No. 44).

Painewebber's Complaint seeks damages for statutory and other pendent claims arising out of the environmental contamination to real property it owns. Specifically, Painewebber seeks statutory relief pursuant to § 6972(a)(1)(B) of the Federal Resource Conservation and Recovery Act, (hereinafter referred to as "RCRA") for Hazardous Waste Discharge in Count I, and pursuant to Fla. Stat. § 378.313, Count II for Contractual Indemnification, Count III for Statutory Strict Liability, Count IV for Common Law Strict Liability, Count V for Negligence, Count VI for Trespass, Count VII for Nuisance and Count VIII for Breach of Indemnity Agreement.

## FACTS

Plaintiff, Painewebber owns approximately 13.83 acres at 17th Street and Lockwood Ridge Road in Sarasota, Florida, which is known as the Northeast Plaza Shopping Center ("Northeast Plaza" or the "Property"). Defendant, Mobil is the owner and/or operator of a service station (MOBIL service station number 02–F3F) located at 1700 Lockwood Ridge Road, Sarasota, Florida, to the

south, to the west, and contiguous to the property owned by Plaintiff.

During the period between 1957 and 1967 MOBIL constructed and thereafter owned, occupied, and operated a service station at this location. In the operation of the service station, Mobil handled, stored, and used petroleum products such as gasoline, diesel fuel, and other contaminants. Defendant stored such petroleum products on the service station site in underground storage tanks.

During a monthly investigation, in or about March of 1987, Defendant and/or its consultants discovered free floating petroleum product in three of the four tank area compliance wells located on the service station site. Also discovered, were crack(s) in certain distribution lines for the tanks, and other deficiencies.

Subsequent studies revealed that petroleum contamination had migrated across the property line separating Mobil's service station site from Painewebber's "Northeast Plaza" property, causing petroleum contamination of the groundwater and/or soil of Plaintiff's "Northeast Plaza" property.

Defendant concedes that the subject property suffers from environmental contamination caused by free floating petroleum products and has attempted to remedy the soil and groundwater contamination under the supervision of the Florida Department of Environmental Regulation (hereinafter referred to as "DER"). However, Defendant denies that it caused or was otherwise responsible for the contamination, and attributes the cause to third parties. Notwithstanding, Defendant has agreed to fully remediate the subject property, at its sole expense, in strict compliance with Federal and State law, and has commenced the remediation process.

Plaintiff asserts that since spring of 1990 and during all times relevant hereto, the "Northeast Plaza" property has been and is available for sale. However, Plaintiff contends that, due to the petroleum contamination, bona fide offers to purchase the property have not been forthcoming. Additionally, Plaintiff has been unsuccessful in refinancing the mortgage on the contaminated property, which Plaintiff argues would be fiscally prudent and reasonable based upon revenue streams available for the required debt servicing, but for the soil and groundwater contamination.

Due to Plaintiff's inability to secure refinancing, and pay the note secured by the property's wrap around mortgage, Plaintiff entered into a forbearance agreement on the debt with Northeast Plaza Associates at a rate of eleven percent (11%). Plaintiff also incurred loan extension fees payable to Barnett Bank to extend the note payment.

On September 26, 1991, Plaintiff anticipated that it would be unable to obtain third-party refinancing of the mortgage before the due date, and requested that Defendant provide refinancing or an alternative financial arrangement, which Defendant refused to do. Plaintiff's financial situation continued to deteriorate and Plaintiff defaulted. The default resulted in assignment of even higher interest debts, additional penalties, and potential foreclosure.

Plaintiff argues that in addition to its debts, it has been obligated to employ the services of an environmental consultant to monitor Defendant's compliance with the DER's clean-up directives, to conduct a study and prepare a disclosure statement concerning the property's environmental condition for prospective purchasers and potential financing entities, and to employ legal counsel to pursue this action. Plaintiff states that it has demanded reimbursement, in writing, from Defendant for these out-of-pocket expenses, required due to the contamination and Defendant has refused.

Although Plaintiff concedes that "Northeast Plaza" continues to be "economically viable in its intended use as a shopping center as evidenced by recent lease signings" (Dkt. No. 1, Pg. 7), Plaintiff argues that "the contamination has deterred potential mortgage lenders and buyers, reduced the value of the property, and rendered the property unmarketable." (Dkt. No. 1, Pg. 7). Consequently, Plaintiff claims the contamination has adversely affected, and continues to adversely affect, its ability to carry on normal business operations.

Plaintiff has amended Count I of the Complaint to include reasonable attorney fees, and to seek entry of a mandatory final injunction directing Defendant to expedite its remediation efforts by implementing certain improvements in addition to its current monitoring system (Dkt. No. 44).

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, MOBIL argues that it is entitled to partial summary judgment based on the following:

(1) Mobil contends that Painewebber has not satisfied the jurisdictional requirements of RCRA regarding notice and is barred from seeking injunctive relief.

(2) Mobil argues that Painewebber has sought relief pursuant to § 6972(a)(1)(B) of the Federal Resource Conservation and Recovery Act and Florida Statute, Section 376.313, and that these statutes do not provide Painewebber with a private cause of action for monetary damages. Therefore, Mobil claims that Painewebber cannot maintain these claims as a matter of law.

(3) Mobil argues that Painewebber is seeking to recover "diminution in value" of the subject real property purportedly caused by the contamination. Painewebber seeks to recover the difference between the fair market value of the property, absent contamination and the fair market value of the property after contamination. Mobil claims that this measure of damages is unavailable to Painewebber as a matter of law, because Mobil has already entered into an agreement with Painewebber which provided full reimbursement for all losses.

In that agreement, Mobil agreed to fully remediate the property, at its sole expense, therefore, making Painewebber completely "whole". (Dkt. No. 60, Exhibit "A"—"Monitoring Well Installation Agreement.") Consequently, Mobil argues that the costs for remediating the property and "diminution" in fair market value of the property are mutually exclusive remedies as a matter of law. In view of Plaintiff's acceptance of Mobil's offer to remediate, Mobil contends that Painewebber cannot obtain both measures of damage ("remediation and diminution") and realize a windfall by extracting a greater recovery from Mobil than the amount of actual damages which have been sustained.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. All evidence and factual inferences should be viewed in the light most favorable to the nonmoving party. *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987). No genuine issue exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## DISCUSSION

In man's efforts to improve his quality of life new elements are being created and dispersed into the environment. Congress has realized that man's survival depends upon his ability to handle, store, and dispose of these elements while maintaining a safe environment for future generations. Toward that end, since 1969 Congress has enacted a series of protective measures to curb discharges into the air and water, noise control, and regulation of solid waste disposal.

In order to regulate the disposal of discarded material and hazardous wastes, in 1976 Congress enacted the Resource Conser-

vation and Recovery Act. 42 U.S.C.A. Sections 6901–6987. RCRA is a regulatory approach to manage the problem of hazardous waste disposal and provides penalties against generators, transporters, and disposers of hazardous waste.

## 42 U.S.C. § 6972—CITIZENS SUITS

Title 42 U.S.C., § 6972 is the citizens suit provision of RCRA which creates a jurisdictional basis from which citizens may bring suit against persons who violate the regulations or the administrator who fails to use the statute's regulatory mechanism. Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) against any person (including the United States, and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter; or

(B) against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, treatment, storage, or disposal facility, who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

## NOTICE REQUIREMENTS AND DISTRICT COURT JURISDICTION UNDER § 6972

■ In seeking relief under this statute, Mobil contends that Painewebber failed to satisfy all conditions precedent to seeking injunctive relief and, as such, argues that Count I of the Complaint is jurisdictionally defective. Mobil brings to the Court's attention that Painewebber failed to allege in pleadings that it gave the mandatory ninety

(90) day notice as required by 42 U.S.C. § 6972(b)(2)(A) and has failed to comply with the statute's jurisdictional notice requirement. (Dkt. No. 60).

The notice provision in U.S.C. § 6972 provides:

No action may be commenced under subdivision (a)(1)(B) of This section prior to ninety (90) days after the Plaintiff has given notice of the endangerment to:

(i) the Administrator;

(ii) the State in which the alleged endangerment may occur; and

(iii) any person alleged to have contributed to or to be contributing to the past or present handling, storage, treatment, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section, except that such action may be brought immediately after such notification in the case of a violation under this section respecting a violation of subchapter III of this chapter.

In response, Plaintiff raises several points for the Court to consider. Plaintiff asserts that it has satisfied all conditions precedent to seeking injunctive relief under RCRA, because in Count I of the Complaint, Painewebber has stated that the claim involves "hazardous wastes".

Plaintiff argues that Congress carved out an exception which allows a citizen suit to be brought immediately when the claim involves a "hazardous waste" and on this basis seeks exemption from application of the statutory notice requirement. Painewebber, therefore, contends that the notice required under 42 U.S.C. § 6972(b)(2)(A) is inapplicable.

The 1984 amendments to RCRA make it clear that a plaintiff may bring a hazardous waste claim, under 42 U.S.C. § 6972(b) immediately after giving notice to the administrator of the Environmental Protection Agency ("EPA"), the state, and the alleged violator. *Dague v. City of Burlington*, 935 F.2d 1343, 1351 (2nd Cir.1991). Congress determined that, when hazardous wastes were involved the danger of delay and potential for greater damage to public health or the envi-

ronment outweigh the justification for pre-suit delay. *Id.* at 1351.

Plaintiff has correctly stated the provision in the statute which exempts the notice requirement, but did not provide support for its contention that petroleum is a hazardous waste.

Is petroleum a hazardous waste? Several courts have considered this question, in *Recycling, Inc. v. Amoco Oil Co.*, 856 F.Supp. 671 (N.D.Ga.1991), the court deemed that leaking petroleum constitutes "disposal" of "solid waste", which can present imminent and substantial endangerment to health or environment and can form the basis for a claim under the citizen suit provision of RCRA. In considering defendant's motion for reconsideration in the same case, the Court went one step further stating that in order to have previously concluded that RCRA applied to the case, "the Court must conclude that leaked petroleum may be hazardous waste." *Id.* at 678. However, the court did not explain its analysis in reaching this conclusion. It is possible that the court's decision was based on the fact that two of the components contained in petroleum are xylene and benzene which are defined as hazardous waste in subchapter III [1].

The court in *Zands v. Nelson*, 779 F.Supp. 1254, 1262 (S.D.Cal.1991), defined solid waste very broadly as "any discarded material", but noted that even this broad definition does not include materials that are still useful products. The court found that once gasoline has leaked into the soil (even unintentionally) it cannot be re-used or recycled so it becomes "discarded material" constituting "solid waste" for purposes of the citizen's suit provision of RCRA. *Id.* 1262.

In *Dominick's Finer Foods, Inc. v. Amoco Oil Company and Shell Oil Company*, No. 93c 4210, 1993 WL 524808, at *2 (N.D.Ill. December 15, 1993) the contested issue was whether petroleum from an underground tank constituted either a "hazardous or solid waste." The court concluded that leaked petroleum from an underground storage tank constitutes a "solid waste." *Id.* at 2.

When considering whether petroleum is a solid or a hazardous waste, in *Winston v. Shell Oil Co.*, 861 F.Supp. 713 (C.D.Ill.1994) the court found that, like in § 9601(14) [2] of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA") Congress in RCRA also meant to exclude petroleum from being defined as a hazardous substance. The court noted that Congress had not specifically excluded petroleum in RCRA's definitions of hazardous wastes as it had done in CERCLA, but observed that petroleum was specifically classified in another subchapter of the statutes (IX) as a "regulated substance," which is defined as:

(A) any substance defined in section § 9601(14) of this title (but not including any substance regulated as a hazardous waste under subchapter III of this chapter); and

(B) petroleum. (§ 6991(2))

The court reasoned that, by including petroleum in the definition of a regulated substance in subsection IX, while excluding hazardous wastes defined in CERCLA § 9601(14) and regulated by subchapter III, Congress also intended that petroleum be excluded from the definition of hazardous waste under RCRA. This Court is in agreement with this reasoning; therefore, the Court turns to the issue of whether or not the notice was required and made.

RCRA § 6972(b)(2)(A) prohibits a plaintiff from bringing an action pursuant to § 6972(a)(1)(B) prior to ninety (90) days after plaintiff has given notice of the endangerment "except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter." 42 U.S.C. § 6972(b)(2)(A).

---

**1.** Subchapter III of RCRA consists of §§ 6921–6939c and is concerned with hazardous waste management.

**2.** Title 42 U.S.C. § 9601(14) states that the term "hazardous substance" **does not include petrole-**

**um,** including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph.

As stated previously, Painewebber asserts that it has satisfied all conditions precedent to seeking injunctive relief under RCRA because there is no pre-suit notice required because in Count I of Plaintiff's Complaint it has stated that the petroleum contamination is hazardous waste; entitling it to the exemption provided under 42 U.S.C. § 6972(b)(2)(A). (Dkt. No. 72).

*Agricultural Excess and Surplus Insurance Company v. A.B.D. Tank & Pump Co.*, 878 F.Supp. 1091 (N.D.Ill.1995) is a case directly on point. In *Agricultural*, plaintiffs were property owners whose soil and ground water had been contaminated by leaking petroleum migrating from underground storage tanks on adjacent property owned by defendant, A.B.D. Tank. Like Plaintiff, *Agricultural* sought an injunction pursuant to RCRA alleging imminent and substantial endangerment to health and the environment and other relief available under state law theories. *Agricultural* plaintiffs similarly claimed that they were entitled to an exemption under § 6972(b)(2)(A)'s exception for subchapter III violations because the leaked petroleum was a hazardous waste. Although the court held that *Agricultural* could bring a civil enforcement action under subchapter VII § 6972(a) because leaked petroleum from underground storage tanks is a solid waste, it concluded that petroleum is not a hazardous waste. As subchapter III regulates only hazardous wastes, the court held that the plaintiffs could not take advantage of § 6972(b)(2)(A)'s exception.

The court's holding in *Agricultural* is persuasive. The broad definition of "solid wastes" in *Zands* and in the C.F.R.'s make it plausible for petroleum to be seen as a "solid waste". Therefore, adopting the rationale in *Agricultural*, Plaintiff is not entitled to an exception under § 6972(b)(2)(A) for complying with the statutory notice required.

The Supreme Court held that because the notification language is expressly incorporated in Section 6972(a), "it acts as a specific limitation on a citizen's right to bring suit." *Hallstrom v. Tillamook County*, 493 U.S. 20, 23, 110 S.Ct. 304, 307, 107 L.Ed.2d 237 (1989), *reh'g denied*, 493 U.S. 1037, 110 S.Ct. 761, 107 L.Ed.2d 777 (1990). Plaintiff argues

that *Hallstrom* is not applicable because petroleum is a hazardous waste. However, since this Court agrees with previous determinations that petroleum is not a hazardous waste but a solid waste, *Hallstrom* is controlling. Painewebber is required to give statutory notice. Compliance with notice requirements "are mandatory conditions precedent to commencing suit under RCRA citizens suit provisions; a district court may not disregard these requirements at its discretion." *Hallstrom*, 493 U.S. at 31, 110 S.Ct. at 311.

Following a review of the case file, the Court notes no evidence supplied by Plaintiff to show that it has fulfilled the notice requirements. Offering no proof of notice in response to Mobil's Motion to Dismiss, based upon this jurisdictional deficiency, Painewebber instead urges the Court not to dismiss the action after three (3) years of litigation and argues that such a dismissal would unnecessarily waste judicial resources. The Court is not sympathetic to this argument.

RCRA requires a citizen to give notice to the administrator of the EPA, the state in which the alleged violation occurs, and the violator of intent to file the law suit prior to filing the Complaint. The clear language of the statute put Painewebber on notice of the requirements for bringing suit and formal procedures for notice are clearly set out in applicable Federal Regulations. Section 6972 does not provide for constructive notification. "The notice requirement is not a technical wrinkle or superfluous formality that federal courts may waive at will. [I]t is part of the jurisdictional conferral from Congress that cannot be altered by the courts." *Garcia v. Cecos International*, 761 F.2d 76, 79 (1st Cir.1985).

In its Motion for Partial Summary Judgment, Mobil has demonstrated that Painewebber failed to meet the statutory notice requirement of § 6972(b), a requisite to pursuing this cause of action. Painewebber has presented no evidence to the contrary. Therefore, the Court is without subject matter jurisdiction, and must dismiss Count I of Painewebber's Complaint as barred by the terms of the statute. By dismissing Count I, the Court furthers the Congressional purpose of giving violators a 90–day period in

which to achieve compliance with RCRA regulations.

Counts II, through VIII of Painewebber's amended Complaint address a variety of supplemental state claims and seek attorney's fees. The Court was given original jurisdiction of these claims pursuant to 28 U.S.C. § 1331 because the RCRA claims arose "under the Constitution, law, or treaties of the United States."

As jurisdiction in this case is based on a federal issue, RCRA and the dismissal of Count I disposes of all federal claims before the Court, this Court no longer has original jurisdiction over this action and may decline to exercise jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(c). If federal claims are dismissed before trial, the Supreme Court has admonished that pending state claims should be dismissed as well. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1972). Therefore, the supplemental state claims are hereby dismissed.

Accordingly, it is

**ORDERED** that the Defendant Mobil's Motion for Partial Summary Judgment (Dkt. No. 60) as to COUNT I contained in Plaintiff's Complaint, Supplement and Amended Complaint (Dkt. No. 1 and Dkt. No. 44) be **GRANTED;** Counts II thorough VIII of Plaintiff's Complaint, Supplement and Amended Complaint (Dkt. No. 1 and Dkt. No. 44) be **DISMISSED,** without prejudice; and the Clerk of the Court be **directed** to enter a judgment for Defendant on Count I and dismiss all other claims to **CLOSE** this case.

**DONE AND ORDERED.**

### ORDER ON MOTION FOR RECONSIDERATION

This cause is before the Court on Plaintiff's Motion for Reconsideration of Order Granting Defendant's Motion for Summary Judgment (Docket No. 86) and Defendant's Opposition to the Motion (Docket No. 88). The Court fully stated the facts of this case in its previous Order (Docket No. 81), and will not restate them here.

Plaintiff, PAINEWEBBER, requests that the Court vacate its Order of Partial Summary Judgment (Docket No. 81) and allow PAINEWEBBER to conduct additional limited discovery to establish that the notice requirement under the Federal Resource Conservation and Recovery Act (RCRA) was met.

In the alternative, Plaintiff requests that the Court convert its Order of Partial Summary Judgment to a Dismissal for lack of subject matter jurisdiction in order to clarify that PAINEWEBBER may refile its claim once it conforms to the RCRA notice requirement.

■ The court may properly reconsider a grant of summary judgment upon the timely filing of a motion for reconsideration pursuant to Rule 59(e), *Fed.R.Civ.P.* The Order granting partial summary judgment was filed on May 1, 1995 (Docket No. 81). This Motion for Reconsideration (Docket 86) was filed May 17, 1995. Absent a showing of good cause, this motion fails to meet the timely requirement of Rule 59(e) which states: "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." *Fed. R.Civ.P.* (emphasis added). However, the Court will address the issues raised by Plaintiff's Motion to dispel any confusion regarding the Order granting partial summary judgment.

### STANDARD OF REVIEW— RECONSIDERATION

■ A motion for reconsideration must demonstrate why the court should reconsider its prior decision and "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Cover v. Wal-Mart Stores, Inc.,* 148 F.R.D. 294 (M.D.Fla.1993). A motion for reconsideration should raise new issues, not merely readdress issues litigated previously. *Government Personnel Services, Inc. v. Government Personnel Life Insurance Co.,* 759 F.Supp. 792, 793 (M.D.Fla.1991).

### RECONSIDERATION OF SUMMARY JUDGMENT

Plaintiff alleges that the Court erred in failing to consider the appropriateness of al-

lowing additional limited discovery to prove informal notice prior to granting summary judgment. Plaintiff cites *Klickitat County v. Columbia River Gorge Commission,* 770 F.Supp. 1419 (E.D.Wash.1991) in support of its contention that informal notice is sufficient under RCRA.

However, Plaintiff did not advance this argument in its Opposition Memorandum (Docket No. 72), nor did it request the Court to stay its ruling on summary judgment pending additional discovery. Instead, Plaintiff opposed summary judgment on the basis that its RCRA claim was exempt from the notice requirement under the RCRA hazardous waste exception. However, Plaintiff cited no authority to support its contention that petroleum products were included in the statutory definition of hazardous waste. Now, after three years of litigation, Plaintiff raises the issue of informal notice for the first time. Yet, this is not a new issue, merely one that Plaintiff did not address until the present time.

Further, this Court discussed the RCRA notice requirement at some length in its Order for Partial Summary Judgment (Docket No. 81). The Court examined the Supreme Court's decision in *Hallstrom v. Tillamook County,* 493 U.S. 20, 23, 110 S.Ct. 304, 307, 107 L.Ed.2d 237 (1989), *reh'g denied,* 493 U.S. 1037, 110 S.Ct. 761, 107 L.Ed.2d 777 (1990), and, contrary to Plaintiff's argument, found *Hallstrom* controlling. The *Hallstrom* Court held that compliance with notice requirements "are mandatory conditions precedent to commencing suit under the RCRA citizen suit provision; a district court may not disregard these requirements at its discretion." *Id.,* 493 U.S. at 31, 110 S.Ct. at 311. Therefore, the Court finds that this issue has already been adjudicated, and is not subject to reconsideration.

## MODIFICATION OF SUMMARY JUDGMENT

In the alternative, Plaintiff requests that the Court amend its Order granting partial summary judgment to an Order of Dismissal to prevent any future confusion as to the Court's disposition of this cause of action. Plaintiff argues that the summary judgment,

on its face, may appear to be a determination on the merits, rather than a jurisdictional determination.

In support of its Motion, Plaintiff cites *Leaver v. Parker,* 121 F.2d 738 (9th Cir.1941) (modifying summary judgment so as to dismiss action for want of subject matter jurisdiction). The *Leaver* court referenced what is now Rule 12(h)(3) of the Federal Rules of Civil Procedure which states: "[w]henever it appears ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

While the Court granted the Defendant's Motion for Partial Summary Judgment (Docket No. 81), it is clear from the Memorandum Opinion that the basis was lack of subject matter jurisdiction, not determination on the merits. (Docket No. 81 at 14.) Therefore, it is clear that Plaintiff is not barred from refiling its claim after meeting the jurisdictional requirements. Accordingly, it is

**ORDERED** that Plaintiff's Motion for Reconsideration (Docket No. 86) be **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 23rd day of June, 1995.